854 A.2d 450

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Melvin SPEIGHT, Appellant.**

**No. 330 CAP.**

Supreme Court of Pennsylvania.

Submitted Sept. 30, 2002.

Decided July 22, 2004.

---

526

Bernard L. Siegel, Esq., Philadelphia, for Melvin Speight.

Hugh J. Burns, Esq., Amy Zapp, Esq., Philadelphia, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice EAKIN.

This is an appeal from the denial of appellant's petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. We affirm.

Following a jury trial, appellant was convicted of two counts of first degree murder, two counts of aggravated assault, one count of criminal conspiracy to commit murder, and one count of possession of an instrument of crime. At sentencing, the jury concluded the two aggravating circumstances[1] it found outweighed the one mitigating circumstance,[2] and sentenced appellant to death. *Commonwealth v. Speight*, 544 Pa. 451, 677 A.2d 317, 320 (1996).

1. 42 Pa.C.S. § 9711(d)(7) (grave risk of death to others) and (10) (multiple murders).
2. 42 Pa.C.S. § 9711(e)(4) (defendant's age).

This Court affirmed the verdict and death sentence, holding the evidence was sufficient to support the verdict, the death sentence was legal and proportionate, and appellant had received effective representation by trial counsel. *Id.*

Appellant filed a timely *pro se* PCRA petition. Appointed counsel filed supplemental petitions; however, appellant subsequently filed a letter expressing dissatisfaction with his counsel. The PCRA court permitted counsel to withdraw and appointed present counsel, who filed a supplemental petition.

At a PCRA hearing, trial counsel testified the Commonwealth offered appellant an open plea to third degree murder in return for his testimony against his co-defendants, and appellant refused. On December 12, 2000, the PCRA court denied relief on the convictions, but granted a new penalty hearing,[3] stating:

> If the Commonwealth chooses to appeal, then, of course, you have that right; and if the defendant chooses to appeal from my denial of the Petition with respect to the trial stage, you have that right.

> If there is no appeal through the regular course, you can ask that the matter be listed before me for the new penalty stage hearing; and if is there [sic] no appeal, it will be done without a jury very expeditiously and I will sentence the [appellant] to life imprisonment without parole, which I think would be appropriate.

N.T. PCRA Hearing, 12/12/00, at 3–4. The Commonwealth moved for reconsideration of the court's grant of a new penalty stage hearing. The PCRA court vacated the order granting the new penalty hearing so it could properly review

---

**3.** The court was primarily concerned with the proportionality of appellant's sentence in comparison to his co-defendants' sentences. The court also "expressed three other concerns which contributed to the decision to grant a new penalty phase: (1) trial counsel's failure to properly prepare for the penalty phase; (2) trial counsel's failure to life[ ]qualify the jury; and (3) trial counsel's ineffectiness [sic] by offering questions to prospective jurors which confused the [appellant]'s right to abstain from testimony with his right against self-incrimination." PCRA Court Opinion, 4/3/01, at 2 n. 7 (citing N.T. PCRA Hearing, 12/12/00, at 4).

▬▬▬▬▬

the motion for reconsideration. Appellant filed an appeal in the Superior Court, challenging the denial of relief on the murder convictions, but later withdrew it pending ultimate disposition of the Commonwealth's motion for reconsideration. The PCRA court, after reviewing the proportionality and ineffectiveness claims, concluded appellant was not entitled to a new penalty hearing. In concluding a new penalty hearing was not warranted, the court explained:

> This Court initially granted the [appellant] a new penalty phase hearing based on the equitable consideration that the [appellant's] sentence was more severe than those of his co-conspirators, despite the fact that the [appellant] was only circumstantially identified as a gunman. After careful review of controlling legal precedent, there is simply no legal basis to uphold this decision.

PCRA Court Opinion, 4/3/01, at 4–5.

This appeal followed, in which appellant raises essentially two issues: due process and ineffectiveness of counsel.

Appellant first contends he was deprived of due process of law under the United States and Pennsylvania Constitutions when the PCRA court reversed its decision regarding his death sentences. He maintains the reversal of his death sentences and the institution of a life sentence without parole was conditioned upon his not appealing the denial of a new trial. Appellant appealed, and the PCRA court denied relief, reinstating his death sentences, which appellant claims establishes a presumption of vindictiveness.

▬▬▬ A court may not punish an appellant for exercising appellate rights. *North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S.Ct. 2072 (1969). In cases where there is no actual vindictiveness, but instead there is an apprehension on the part of a defendant to exercise his legal rights due to a fear of retaliation from the court, a presumption of vindictiveness may arise. *United States v. Esposito*, 968 F.2d 300, 303 (3d Cir.1992) (citing *United States v. Goodwin*, 457 U.S. 368, 380, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)). "In such cases, [a court] may reverse the defendant's conviction only if [it]

appl[ies] a presumption of vindictiveness, which would then be applicable to all cases." *Id.* A court may adopt the presumption of vindictiveness only where there is a reasonable likelihood of vindictiveness. *Id.* (citing *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)). The inquiry is whether there is a reasonable danger a state may have retaliated against the accused for exercising a legal right. *See Goodwin,* at 381, 102 S.Ct. 2485. This Court has applied this reasoning in a similar fashion:

> The Due Process Clause of the Fourteenth Amendment requires that the States keep established avenues of appeal "free of unreasoned distinctions that can only impede open and equal access to the courts." Imposing a heavier sentence upon every reconvicted defendant "for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside" would undoubtedly be a flagrant due process violation. Such a policy would be tantamount to putting a price on an appeal, and would "chill" the exercise of that right. "[D]ue process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." [T]o assure the absence of a vindictive motivation, . . . "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." This requirement has been read to create "a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence."

*Commonwealth v. Martorano,* 535 Pa. 178, 634 A.2d 1063, 1071 (1993) (citations omitted).

In *Pearce,* the United States Supreme Court held the presumption of vindictiveness arises "whenever a judge imposes a more severe sentence upon a defendant after a new trial." *Pearce,* at 726, 89 S.Ct. 2072. In order to rebut the presumption that the judge was motivated by vindictiveness when imposing a more severe sentence, he must set forth affirma-

tive reasons based on objective information for his actions. *Esposito,* at 303 (citing *Pearce,* at 726, 89 S.Ct. 2072).

■ Here, appellant was sentenced to death by a jury. The PCRA court held a hearing where relief was denied regarding appellants conviction, but the court granted a new penalty hearing based on "equitable grounds." PCRA Court Opinion, 4/3/01, at 2. Thereafter, the Commonwealth motioned for reconsideration of the PCRA courts decision to revoke appellants death sentence and grant a new penalty hearing. After hearing argument on that motion, the judge stated his prior decision to vacate the death sentence had no support in the law, and he reimposed the death sentence. This is not retaliatory or vindictive, but rather reflects the legal error of the prior order.

■ Appellant insists the PCRA court's statement promising a life sentence implied a threat that if he appealed, the possibility of a life sentence would no longer be available. However, the PCRA court's statement served only to illustrate the potential course of the case. Because the Commonwealth filed a motion to reconsider, the judge was forced to abandon his "equitable" decision and properly evaluate the claims under the law.

■ Even if the imposition of an increased sentence here raises the presumption of vindictiveness set forth in *Pearce,* the PCRA court, in its April 3, 2001 opinion, adequately rebutted this presumption by setting forth affirmative reasons based on objective information for granting reconsideration and subsequently denying PCRA relief. *See Esposito.* In doing so, the court reviewed precedent on the proportionality of sentences and ineffectiveness of counsel to conclude a new penalty hearing was not warranted.[4] We see no reason to disturb this determination. Appellant's assertions are meritless, and his first claim fails.

4. *See Commonwealth v. Gribble,* 550 Pa. 62, 703 A.2d 426 (1997) (comparative proportionality review asks whether punishment for specific crime was applied consistently in similar cases).

Appellant next claims trial counsel and appellate counsel were ineffective in several respects: [5]

 a. When, during questioning of prospective jurors, counsel consistently equated the right of appellant to not testify with the constitutional right against self-incrimination.

 b. When, during questioning of prospective jurors, counsel failed to question a single panelist regarding the ability to impose life imprisonment after the trial court and the prosecutor had questioned each panelist about the ability to impose death.

 c. Failing to object to an incorrect jury instruction by the trial court on accomplice and conspiratorial liability in a case of murder of the first degree.

 d. Failing to request an instruction of the trial court to the jury at the penalty phase regarding the right of the jury to exercise mercy fairly arising from the evidence.

 e. Failing to properly prepare and present a cogent case for mitigation at the penalty phase.

Appellant's Brief, at 2.

 The standard for proving ineffective assistance of counsel is well settled. An appellant must show: (1) the underlying claim is of arguable merit; (2) counsel's performance lacked a reasonable basis; and (3) the ineffectiveness of counsel caused him prejudice. *Commonwealth v. (Michael) Pierce,* 567 Pa. 186, 786 A.2d 203, 213 (2001); *see Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[6] The ineffectiveness standard is the same under the PCRA as it is on direct appeal. *Commonwealth v. Kimball,*

---

**5.** Appellant's final issue asserts appellate counsel was ineffective for failing to raise the issue of the presumption of vindictiveness. Though this issue is listed among his questions presented, appellant failed to argue it in his brief. Moreover, appellant failed to raise his final issue with the PCRA court, and it is therefore waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 725 (2000); *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 704 (1998).

**6.** The *Strickland* "performance and prejudice" test was recognized by this Court in *Commonwealth v. (Charles) Pierce,* 515 Pa. 153, 527 A.2d 973 (1987), as proper under the Pennsylvania Constitution.

555 Pa. 299, 724 A.2d 326, 331–32 (1999). Failure to address any prong of the test will defeat an ineffectiveness claim. *Commonwealth v. Basemore*, 560 Pa. 258, 744 A.2d 717, 738 n. 23 (2000) (citation omitted) (ordinarily, post conviction claim of ineffective assistance of counsel may be denied by showing petitioner's evidence fails to meet single one of three prongs).

■ Recently, this Court announced, in *Commonwealth v. McGill*, 574 Pa. 574, 832 A.2d 1014 (2003), the standard for properly raising "layered" claims of ineffective assistance of counsel under the PCRA. In order to challenge the effectiveness of trial and appellate counsel, the PCRA petitioner must:

> (1) *plead*, in his PCRA petition, that [appellate counsel] was ineffective for failing to allege that [trial counsel] was ineffective for [taking or omitting some action]; and (2) *present* argument on . . . each prong of the *Pearce* test as to [appellate counsel]'s representation, in his briefs or other court memoranda.

*McGill*, at 1022 (emphasis in original) (internal citations omitted). If the petitioner takes these steps, then his layered ineffectiveness claim has been preserved for review. *Id.*

■ Appellant has failed to properly layer his ineffectiveness claims with regard to his first, second, and fifth issues.[7] Although he pled and presented argument concerning trial counsel's ineffectiveness, and has alleged appellate counsel's ineffectiveness, he did not present any argument as to appellate counsel's ineffectiveness. This Court recently stated in *Commonwealth v. Rush*, 576 Pa. 3, 838 A.2d 651 (2003), "where the petitioner has pled, presented, and proved his 'nested' claim of trial counsel ineffectiveness, a remand is warranted to give the petitioner an opportunity to correct any errors with regard to the pleading and presentation of his claim of appellate counsel ineffectiveness." *Id.*, at 657. However, there is no need for a remand where appellant has failed to meet his *Pearce* burden in relation to the underlying claim of trial counsel's ineffectiveness, because appellant would nev-

---

7. Appellant's third and fourth issues are properly pled and presented pursuant to *McGill, supra.*

er be able to establish the arguable merit prong of appellate counsel's ineffectiveness. *Id.*, at 657–58. Here, appellant's arguments as to trial counsel's ineffectiveness fail; thus, remand is unnecessary as appellant will never be able to establish the arguable merit prong of appellate counsel's ineffectiveness.

■ Appellant argues trial counsel was ineffective for equating the right of appellant not to testify with the constitutional right against self-incrimination during the questioning of prospective jurors, and appellate counsel was ineffective for failing to raise this claim. During *voir dire*, each potential juror was questioned individually regarding the answers given to a written questionnaire. Appellant's attorney explained to a number of the individuals who became jurors appellant's right to remain silent. However, in describing this right, counsel stated appellant does not have to take the stand in his own defense because of his "Fifth Amendment right against self-incrimination." *See, e.g.*, N.T. Voir Dire, 6/14/93, at 347. Appellant argues "[e]quating the right to remain silent with the Fifth Amendment right against self-incrimination told the jury that [a]ppellant's failure to testify would be because to do so would be incriminating, but the jury was not to consider that fact in deciding whether he was guilty." Appellant's Brief, at 19.

In *Commonwealth v. Stokes*, 532 Pa. 242, 615 A.2d 704 (1992), this Court warned trial judges against phrasing a "no adverse inference" jury instruction to include a statement of a defendant's right not to incriminate himself when referring to his right not to testify. *Id.*, at 709. Although not pleased with the trial judge's reference to the defendant's right against self-incrimination, this Court held the jury charge, taken as a whole, "sufficiently and accurately apprised the jury of the law it was to consider . . . ." *Id.* (internal quotations omitted). Appellant argues it is considerably more prejudicial for defense counsel to use this terminology when discussing his right to remain silent than it is for an impartial trial judge to make such a reference. Thus, appellant asks this Court to

reverse and remand this matter for a new trial and penalty phase. No such action is necessary.

■ Appellant has failed to show how defense counsel's remarks during *voir dire* prejudiced the jury deliberations. This Court will order a new trial or sentencing hearing only when certain remarks [8] have the unavoidable effect of prejudicing the jury, "forming in their minds fixed bias and hostility toward the [appellant], which would prevent them from properly weighing the evidence and rendering a true verdict." *Commonwealth v. Ogrod*, 576 Pa. 412, 839 A.2d 294, 333–34 (2003). Here, any prejudice which may have been created by the defense attorney's reference to appellant's "right against self-incrimination," was cured by the judge's instructions at the commencement of trial; the judge instructed the jury as follows: "The defendant has no obligation to offer evidence or to testify himself. Under the law every defendant is presumed innocent and has the right to remain silent. The burden is on the Commonwealth to prove him guilty beyond a reasonable doubt." N.T. Trial, 6/22/93, at 20. Additionally, after the close of evidence, the judge reiterated his initial "no adverse inference" instruction:

> In this case, the defendant did not take the stand to testify. It is entirely up to the defendant in each criminal trial whether or not to testify. He has an absolute right founded on the Constitution to remain silent. His plea of guilty is a denial of the charges against him and you must not draw any inference of guilt from the fact that the defendant did not testify.[9] The Commonwealth has to prove the defen-

8. Typically, inappropriate comments are made by the prosecution and objected to by defense counsel. This case presents an unusual situation because the comments were made by defense counsel, who is now accused of providing appellant with ineffective assistance. Although the standard used to judge the prejudicial effect certain comments may have on a jury is usually applied to prosecutorial misconduct, there is no reason why the same standard should not apply to allegedly inappropriate comments made by a defense attorney.

9. The jury instruction given by the judge mirrors, nearly verbatim, the "no adverse inference" instruction found at § 3.10A of the Pennsylvania Suggested Standard Criminal Jury Instructions.

dant's guilt beyond a reasonable doubt without any aid from the fact that the defendant did not testify.

N.T. Trial, 6/24/93, at 139.

▮ It is presumed the jury follows the court's instructions. *Commonwealth v. Johnson*, 542 Pa. 384, 668 A.2d 97, 105 (1995). Thus, any prejudice created in the minds of certain jurors due to defense counsel's statement was cured by the judge's instructions. As appellant's underlying claim lacks merit, his claim regarding appellate counsel's ineffectiveness must fail. *(Michael) Pierce*, at 213; *McGill*, at 1022.

▮ Appellant next contends trial counsel was ineffective for failing to "life qualify" any of the prospective jurors, and appellate counsel was ineffective for failing to raise this claim. "Life qualification" is the process by which prospective jurors are excluded from the jury based on their fixed opinion that the death penalty must be imposed for a first degree murder conviction. *Commonwealth v. Boxley*, 575 Pa. 611, 838 A.2d 608, 613 n. 2 (2003) (citing *Commonwealth v. Keaton*, 556 Pa. 442, 729 A.2d 529, 543 n. 9 (1999)); *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 846 (2003). It is true a defendant on trial for a capital offense may not be denied the right to "life qualify" a jury if he requests to do so; however, there is no constitutional mandate *voir dire* must include this line of questioning unless it is so requested. *Id.; see Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

▮ It is well settled trial counsel is not ineffective for failing to life qualify a jury so long as the jury selection process is otherwise fair and impartial. *Commonwealth v. Bond*, 572 Pa. 588, 819 A.2d 33, 50 (2002). Appellant argues the jury selection process was not otherwise fair and impartial because the trial court "death qualified" all potential jurors, thus ensuring each empaneled juror could impose the death penalty, but not ensuring each juror was not predisposed to imposing the death penalty instead of life imprisonment. Appellant alleges trial counsel's failure to "life qualify" the jurors could have led him to be "possibly tried by twelve people who

were all predisposed to impose the death penalty upon a finding of guilty." Appellant's Brief, at 25.

Appellant points out this Court has stated: "It is well settled that a prospective juror may be excluded for cause when his views on capital punishment are such as would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Commonwealth v. Holland*, 518 Pa. 405, 543 A.2d 1068, 1073 (1988) (internal citations omitted). However, appellant argues in the abstract, alleging without explaining how any of the empaneled jurors were anything other than fair and impartial.

> The mere fact that counsel may not have posed the specific question as to whether a prospective juror would vote for a sentence of life imprisonment in an appropriate case does not justify the conclusion that counsel failed to assure that a fair and impartial jury was selected. Such a talismanic requirement would clearly place form above substance.

*Commonwealth v. Jermyn*, 516 Pa. 460, 533 A.2d 74, 87 (1987). Aside from his bald assertions, appellant has not shown trial counsel failed to assure a fair and impartial jury was selected. Thus, appellant has not proven he was prejudiced in any way by trial counsel's failure to life qualify jurors during *voir dire*. *See Pierce*, at 213 ("Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different."). As such, his ineffectiveness claim concerning appellate counsel must fail. *Id.; McGill*, at 1022.

■ In his third issue, appellant argues appellate counsel was ineffective for not claiming trial counsel was ineffective for failing to challenge the trial court's jury instruction on accomplice and conspiratorial liability in a case of first degree murder. He relies on this Court's decision in *Commonwealth v. Huffman*, 536 Pa. 196, 638 A.2d 961 (1994). In *Huffman*, this Court reversed the defendant's first degree murder conviction and remanded for a new trial because we held the following jury instruction was erroneous and amounted to reversible error:

Thus, in order to find a Defendant guilty of murder in the first degree, you must find that the Defendant caused the death of another person, or that an accomplice or co-conspirator caused the death of another person. That is, you must find that the Defendant's act or the act of an accomplice or co-conspirator is the legal cause of death of [the victim], and thereafter you must determine if the killing was intentional.

*Huffman*, at 962. This charge misstated the law by failing to delineate properly to the jury that, in order to be found guilty of first degree murder as an accomplice, the defendant must have had the specific intent to kill.

Here, the portion of the trial court's instruction appellant takes exception to is:

Now, murder of the first degree, members of the jury, is a criminal homicide committed with a specific intent to kill.... Now, if you believe that the defendant *or his accomplices or co-conspirators* intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence from which *you may infer that the defendant had the specific intent to kill.*

Appellant's Brief, at 25–26 (quoting N.T. Trial, 6/24/93, at 145) (emphasis supplied by appellant). This charge, like the one given in *Huffman*, could allow the jury to reach a first degree murder verdict without finding appellant had the requisite intent to commit the crime; the jury may have been misled into thinking they could convict appellant of murder in the first degree if his accomplice or co-conspirator had specific intent to kill. *See Huffman*, at 963. However, in "reviewing a jury instruction for prejudicial or reversible error, '[it] must be taken as a whole and an error cannot be predicated on an isolated excerpt.'" *Commonwealth v. Thompson*, 559 Pa. 229, 739 A.2d 1023, 1031 (1999) (quoting *Commonwealth v. Baez*, 554 Pa. 66, 720 A.2d 711, 736 (1998)).

The trial court charged the jury on accomplice and co-conspirator liability with jury instructions, taken verbatim, from §§ 8.306A and C of the Pennsylvania Suggested Stan-

dard Criminal Jury Instructions. Before giving the erroneous charge and the charge on accomplice and co-conspirator liability, the court stated: "It will be your duty in this case to determine whether [the victims] died as a result of gunshot wounds inflicted upon them by this defendant or whether this defendant was an accomplice or co-conspirator of the person or persons who actually inflicted the fatal wounds...." N.T. Trial, 6/24/93, at 142. The court gave the following instruction regarding accomplice liability:

> Now, members of the jury, you may find the defendant guilty of a crime without finding that he personally engaged in the conduct required or commission of that crime or even that he was personally present when the crime was committed. A defendant is guilty of a crime if he is an accomplice of another person or persons who commit that crime.... The defendant is an accomplice if with the intent of promotion or facilitating commission of the crime he solicits, commands, encourages, requests the other person or persons to commit it or aids, agrees to aid, or attempts to aid the other person or persons in the planning or committing it.... You may find the defendant guilty of a crime on the theory that he was an accomplice as long as you are satisfied beyond a reasonable doubt that the crime was committed and that the defendant was an accomplice of the person or persons who committed it.

N.T. Trial, 6/24/93, at 154–55. The Court then gave an instruction on co-conspirator liability, stating the jury was to determine whether appellant conspired with the intent of promoting or facilitating the commission of the crimes charged. *Id.*, at 156.

Read as a whole, the charge given sufficiently instructed the jury regarding the requirement that an individual must have specific intent to kill in order to be found guilty of first degree murder as an accomplice. *Commonwealth v. Rice*, 568 Pa. 182, 795 A.2d 340, 352 (2002) ("Appellate review of a charge must be based on an examination of the instruction as a whole to determine whether it was fair or prejudicial.") (citation omitted); *see* 18 Pa.C.S. § 306 (defining accomplice liability).

Therefore, trial counsel cannot be deemed ineffective because he did not argue for different jury instructions regarding accomplice and co-conspirator liability. As a result, appellate counsel is not ineffective for failing to raise trial counsel's ineffectiveness. *See McGill, supra.*

Appellant next contends appellate counsel was ineffective for not claiming trial counsel was ineffective for failing to request the jury be instructed on its mercy dispensing power during the penalty phase. Appellant relies on *Commonwealth v. Zook,* 532 Pa. 79, 615 A.2d 1 (1992). However, *Zook* held a trial court does not err if it instructs a jury that any demonstration of mercy or sympathy must be based on mitigating circumstances; it did not make such instruction mandatory. Here, the jury found one mitigating circumstance, but also found the circumstance was outweighed by two aggravating circumstances.[10] Moreover, in *Commonwealth v. Hill,* 542 Pa. 291, 666 A.2d 642, 652 n. 10 (1995), this Court held counsel could not be deemed ineffective for failing to request a jury be instructed on its mercy dispensing power. In this matter, *Hill* is controlling, and appellant's claim fails because trial counsel cannot be found ineffective for failing to assert this meritless claim. *(Michael) Pierce,* at 213. Consequently, appellate counsel cannot be found ineffective for not raising this issue on direct appeal. *See McGill.*

Finally, appellant contends trial counsel was ineffective for failing to "adequately prepare for sentencing and for failing to develop and present all available mitigating evidence," Appellant's Brief, at 31, and that appellate counsel was ineffective for failing to raise this claim. Appellant lists various aspects of his background trial counsel should have investigated; however, he does not allege what type of mitigating evidence these investigations would have revealed. Appellant's boilerplate allegations that trial counsel did not ade-

---

**10.** A jury can afford weight as it sees fit in determining whether to impose the death penalty. In other words, a mere mathematical finding of more aggravating or mitigating circumstances is not dispositive; a jury may weigh one factor more heavily than multiple other factors. *See* 42 Pa.C.S. § 9711(c).

quately prepare for sentencing fail to show any such evidence existed. *See Commonwealth v. Jones,* 572 Pa. 343, 815 A.2d 598, 612 (2002) ("mere boilerplate allegations are inadequate to meet the affirmative burden to rebut the presumption that lawyers are competent and effective.") (citing *(Michael) Pierce,* at 221–22 and *Commonwealth v. Pettus,* 492 Pa. 558, 424 A.2d 1332, 1335 (1981)). Accordingly, appellant's claims of trial and appellate counsel's ineffectiveness fail. *McGill, supra.*

The PCRA court's denial of relief is affirmed. The Prothonotary is directed to forward the complete record in this case to the Governor pursuant to 42 Pa.C.S. § 9711(i).

Order affirmed.

Justice SAYLOR files a concurring opinion in which Chief Justice CAPPY and Justice NIGRO join.

Justice SAYLOR, concurring.

While I concur in the result reached by the majority, my reasoning with respect to certain of Appellant's claims is different.

First, I disagree with the majority's assessment of Appellant's due process claim, in particular, that the actions and statements of the PCRA court surrounding the initial grant of relief to Appellant and the subsequent reconsideration and reversal of such order do not raise a presumption of vindictiveness, and that any such claim is meritless. Here, after denying relief on any of the claims respecting the guilt phase of the trial, the PCRA court awarded Appellant a new penalty hearing, citing trial counsel's lack of preparation. Specifically, the PCRA court referenced trial counsel's failure to secure a psychiatric or psychological evaluation of Appellant, review Appellant's juvenile file or prison records for mitigation information, and life-qualify the jury; further, the court noted that, while questioning the jurors, trial counsel confused Appellant's right not to testify with his right against self-incrimination. The PCRA court also stated that if no appeal was filed, the

case could be re-listed before the court without a jury and a life term of imprisonment would be imposed.

Although, as indicated by the majority, the PCRA court's comments may be viewed as merely indicating the potential course of the case, I would not evaluate the claim without reference to the circumstances that followed. For example, on the same day and immediately after Appellant filed a notice of appeal to challenge the portion of the PCRA court's order denying him relief on the claims involving the guilt phase of his trial, the Commonwealth filed a motion for reconsideration of the order granting Appellant a new penalty hearing, averring as the sole reason in support that nothing in Appellant's juvenile file would have been helpful to him at the penalty hearing. At the ensuing argument on the Commonwealth's motion, the PCRA court reversed its earlier order awarding a new penalty hearing, stating that it was doing so based upon the assertions in the Commonwealth's reconsideration petition and upon reviewing the entire record. At that time, the PCRA court did not address the reasons it cited in previously granting relief, other than stating that such grounds were "very loosely" based upon the law and that the court had been primarily acting on the basis of sympathy arising from the disproportionate conviction and sentence Appellant received in relation to his co-defendants.[1] More important, in responding to PCRA counsel's concern with the appearance of vindictiveness, the court explained:

[Y]ou know, there is some question in my mind, I want to make it clear that I'm satisfied that the decision I made now is the proper decision on the record. It is not one that is made with any type of vindictiveness because the defendant chose to appeal even after he had been granted relief with respect to the death penalty, but I say clearly and truly and honestly that was in my mind and it was a factor and to the extent that anybody wants to argue that, they can say that, but I am satisfied that what I do now is proper and right in

1. The PCRA court explained its reasons for reversal in an opinion filed approximately two months later.

accordance with law and not inappropriate on the basis of a fair reconsideration.

The PCRA court's comments arguably indicate that Appellant's decision to file an appeal was "a factor" in granting reconsideration. In my view, such statements, in conjunction with the attending circumstances, are sufficient to demonstrate a "reasonable likelihood" of retaliation against Appellant for exercising his right to appeal such that a presumption of vindictiveness is implicated. *See generally United States v. Esposito,* 968 F.2d 300, 303 (3d Cir.1992) (discussing the applicable standards for a due process claim premised upon vindictiveness). Nevertheless, the presumption may be overcome by objective information in the record. *See United States v. Goodwin,* 457 U.S. 368, 374, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74 (1982). In this case, the record indicates that the PCRA court had initially been motivated by a concern with the sentencing disparity between Appellant and his co-defendants. As the PCRA court conceded, however, "[b]ecause a sentencing jury is required to look beyond the facts of the crime to the character and record of the individual defendant, different sentences for co-conspirators does not mean that one of the sentences is disproportionate." *Commonwealth v. Speight,* 544 Pa. 451, 471, 677 A.2d 317, 327 (1996).

Moreover, none of the reasons articulated by the PCRA court for granting Appellant a new penalty hearing included a finding concerning prejudice and, significantly, support for such a finding did not exist, as Appellant failed to proffer any new or additional mitigation information to establish how the outcome of the penalty hearing would have been different. Absent such proof, no basis existed upon which to award Appellant relief in the first instance. *See generally Commonwealth v. Kimball,* 555 Pa. 299, 312, 724 A.2d 326, 333 (1999) (denoting the standard for relief under the PCRA). On this record, therefore, I would conclude that the presumption of vindictiveness was adequately rebutted.

Second, I depart from the majority's evaluation of Appellant's ineffectiveness claim involving the propriety of the trial court's instructions on accomplice and conspiratorial liability in

connection with a charge of first-degree murder. In such a circumstance, the accomplice or co-conspirator must possess a specific intent to kill to be convicted of first-degree murder. *See Commonwealth v. Huffman*, 536 Pa. 196, 199, 638 A.2d 961, 962 (1994). The trial court is therefore required to "clarify for the jury that the specific intent to kill necessary for a conviction of first-degree murder must be found present in both the actual killer and the accomplice." *Commonwealth v. Chester*, 557 Pa. 358, 380 n. 12, 733 A.2d 1242, 1253 n. 12 (1999). As indicated by the majority, however, the trial court instructed the jury concerning accomplice and conspirator liability, explaining that Appellant could be found guilty of a crime without finding that he personally engaged in either the conduct required or the commission of the crime, provided that he acted as an accomplice or conspirator. In addition, the court permitted the jury to infer that Appellant possessed the specific intent to kill necessary for first-degree murder based upon the use by one of his accomplices or co-conspirators of a deadly weapon on a vital part of the victims' bodies. These instructions permitted the jury to find Appellant guilty of first-degree murder based upon the mental states of his accomplices or co-conspirators.[2]

In the context of a direct appeal and where the issue has been properly preserved, such an error is not harmless. *See Huffman*, 536 Pa. at 200, 638 A.2d at 963 (explaining that, "an uncured inaccurate charge as to a fundamental issue of the law is not harmless error"). On the other hand, when the issue has been raised in connection with an allegation of ineffectiveness, however, the Court has declined to deem the error prejudicial where the defendant was also convicted of a conspiracy to kill, as such objective presupposes the requisite specific intent. *See Commonwealth v. Wayne*, 553 Pa. 614, 633, 720 A.2d 456, 465 (1998). At the same time, however, in

**2.** Contrary to the majority, I do not view the trial court's general instructions on accomplice liability and conspiracy as remedying this defect, as the jury was not otherwise advised that to convict Appellant of first-degree murder based on his status as an accomplice he must have possessed a specific intent to kill. *Accord Huffman*, 536 Pa. at 199, 638 A.2d at 962–63.

circumstances in which a conspiracy involves multiple objectives, including murder, several recent decisions of federal courts have highlighted that the absence of an instruction respecting the specific intent to kill for first-degree murder may allow a jury to infer, improperly, that the mental state necessary to enter into a conspiracy to commit a lesser crime (for example, robbery) also establishes that required for first-degree murder. *See, e.g., Smith v. Horn,* 120 F.3d 400, 413 (3d Cir.1997); *Bronshtein v. Horn,* No. CIV. A. 99–2186, 2001 WL 767593, at *15 (E.D.Pa. July 5, 2001).[3]

The problem identified by the federal courts would be present in this case had the trial court issued a general conspiracy charge subsuming all of the criminal objectives identified in the indictment, since the conspiracy was initially alleged as one to commit "murder, aggravated assault, recklessly endangering another person, possession (sic) instrument of crime, [and] violation [of the] Uniform Firearms Act." The trial court's conspiracy instructions to the jury, however, framed the charge as solely a conspiracy to commit murder, and thus, the specific issue presented in the *Smith* and *Bronshtein* cases is not presented here.

A variant of the federal courts' concern is in issue, nevertheless, since the trial court's instruction framed the objective of the conspiracy as "murder" (as opposed to a conspiracy to kill), and the jury was separately instructed that the definition of murder generally included acts perpetrated with an intent falling short of a specific intent to kill. *See generally* 18 Pa.C.S. § 2502 (identifying the degrees of murder); *Wayne,* 553 Pa. at 631, 720 A.2d at 464 (differentiating first-degree murder from all other forms of homicide). Accordingly, the jury's finding of a conspiracy to commit murder in this case does not necessarily indicate that the jury actually found that Appellant himself possessed the requisite specific intent for first-degree murder. In other words, the *Wayne* rationale

3. Notably, the federal courts in *Smith* and *Bronshtein* employed a harmless error standard in analyzing the issue; as noted, the more stringent prejudice standard is applicable presently.

does not fully resolve the prejudice inquiry in the circumstances of this case.

Although I therefore recognize that, given the trial court's defective instructions, there is some possibility that the jurors may have concluded that Appellant conspired at most to commit third-degree murder as the basis underlying their finding of his guilt as to first-degree murder, I do not believe that there is a reasonable probability that this in fact occurred. The evidence surrounding the murders indicates that Appellant and his co-defendants confronted the victims on a street corner after warning them about interfering with the drug trafficking conducted in that area by Appellant's group. *See Speight*, 544 Pa. at 458–59, 677 A.2d at 320. Immediately thereafter, Appellant and his co-defendants brandished firearms and began shooting, killing two of the victims, and severely injuring two others. *See id.* at 459, 677 A.2d at 320–21. Particularly given the involvement of deadly weapons and the manner of their use, it seems to me to be far more likely that the jury determined that the intended object of the conspiracy was its actual result, i.e., the killing of the victims. Thus, I conclude that Appellant has not satisfied the prejudice requirement for relief under the Post–Conviction Relief Act. *See* 42 Pa.C.S. § 9543(a)(2)(ii).

Chief Justice CAPPY and Justice NIGRO join this concurring opinion.