NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-3427

_____

DREW COLEMAN,

Appellant

v.

SUPERINTENDENT FOREST SCI;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-12-cv-04630)
District Judge: Honorable Mary A. McLaughlin

_____

Argued January 12, 2015

Before: AMBRO, FUENTES, and ROTH, <u>Circuit Judges</u>

(Opinion filed: June 4, 2015)

Peter A. Levin, Esquire        (Argued)
1927 Hamilton Street
Philadelphia, PA   19130

        Counsel for Appellant

Susan E. Affronti                (Argued)
Philadelphia County Office of District Attorney

3 South Penn Square
Philadelphia, PA   19107

      Counsel for Appellees

_____

OPINION*

_____

AMBRO, <u>Circuit Judge</u>

Petitioner Drew Coleman claims he received ineffective assistance of counsel when his attorney failed to renew an objection to an ambiguous jury instruction after the trial court said it would clarify but did not do so.  For the following reasons, we affirm the District Court's denial of *habeas* relief.

**I.**

Bruce Garrick damaged Justin Alls's car in a minor accident on the night of April 12, 2003.  When Alls demanded compensation, a fight ensued and Garrick suffered bruises to the face.  Garrick then went to a nearby bar and asked Coleman and Bernard Kennedy for money to pay Alls.  When asked about the bruises, Garrick explained he was beaten up by Alls and a group of other men.  Coleman "got real loud and real bold" and said "I'm tired of this bullshit.  People coming and trying to do something like that." Trial Tr. 156, Oct. 25, 2006.  Seconds later, he threw the keys to his jeep to Kennedy, who retrieved a gun from the driver's side of the vehicle.  Kennedy then briefly entered a store across the street from where Alls was standing.  When Kennedy left the store, he

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

shot Alls repeatedly, killing him. Coleman and Wayne drove the jeep up to Kennedy, and they drove away together.

Coleman was charged with first-degree murder and conspiracy to commit murder. Kennedy was charged with first-degree murder, conspiracy to commit murder, and possession of an instrument of crime. At their joint trial, the Commonwealth argued that Kennedy committed the murder and that Coleman was liable as a conspirator or accomplice.

Pennsylvania has a special rule of vicarious liability for first-degree murder: a defendant cannot be convicted as an accomplice or conspirator unless he has the "specific intent to kill." *Commonwealth v. Speight*, 854 A.2d 450, 460 (Pa. 2004); *Smith v. Horn*, 120 F.3d 400, 410 (3d Cir. 1997). Early in the jury instruction, however, the Court repeatedly and incorrectly implied that Coleman could be convicted of first-degree murder if "[he] *or* someone with whom he conspire[d] ha[d] the specific intent to kill." Supp. App. 24 (emphasis added). Later in the instruction, the Court correctly explained the special rule.

At the conclusion of the instruction defense counsel objected on multiple grounds, including the ambiguity regarding specific intent. The Court disagreed that the instruction was ambiguous but agreed to clarify. It then instructed the jury on one of the other requested amendments but did not address specific intent, and yet defense counsel did not renew the objection.

Coleman and Kennedy were convicted on all charges. Coleman received a life sentence for the murder and 6 to 12 years for the conspiracy.

3

## II.

The District Court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) requires federal courts reviewing *habeas* petitions to "afford considerable deference to state courts' legal and factual determinations." *Palmer v. Hendricks*, 592 F.3d 386, 391–92 (3d Cir. 2010). On post-conviction review, the Pennsylvania Superior Court rejected Coleman's ineffective-assistance claim after concluding there was no error in the jury instruction. As the Court only cited state law, it is unclear if it decided on the merits whether the jury instruction violated the Due Process Clause of the U.S. Constitution. When a state court "rejects a federal claim without expressly addressing [it], a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). Coleman has not attempted to rebut the *Johnson* presumption or argue that AEDPA deference does not apply. Therefore, we may only grant *habeas* relief if the state-court determination was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1), (2).

## III.

Coleman argues that the first-degree murder instruction on specific intent violated the Due Process Clause, and that defense counsel rendered ineffective assistance by

4

failing to renew the objection to the instruction. *See Strickland v. Washington*, 466 U.S. 668 (1984). But it is reasonable to conclude the instruction was not a violation of the Due Process Clause.

A jury instruction violates the Due Process Clause if it "reliev[es] the State of the burden of proof . . . on the critical question of petitioner's state of mind." *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979). When reviewing an "ambiguous" instruction, we examine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotation marks omitted); *Bronshtein v. Horn*, 404 F.3d 700, 710 (3d Cir. 2005). An instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (internal quotation marks omitted).

Coleman cites several cases holding instructions unconstitutional because they failed to define the specific-intent requirement for first-degree murder in Pennsylvania. *See Bronshtein*, 404 F.3d 700; *Laird v. Horn*, 414 F.3d 419 (3d Cir. 2005); *Everett v. Beard*, 290 F.3d 500 (3d Cir. 2002); *Smith*, 120 F.3d 400. These cases are distinguishable on at least two grounds. First, they were decided *de novo* rather than under AEDPA deference. *Bronshtein*, 404 F.3d at 710 n.4; *Laird*, 414 F.3d at 428; *Everett*, 290 F.3d at 509; *Smith*, 120 F.3d at 420 n.1 (Alito, J., dissenting). And second, the trial courts only gave ambiguous or erroneous instructions; they did not give any curative language that could clarify the specific-intent requirement.

In contrast, several sections of Coleman's jury instruction clearly articulated the specific-intent requirement after the incorrect instruction was given. The Court explained:

> So to repeat: in order to find either defendant guilty of the conspiracy to commit murder in the first degree or murder in the third degree, you must be satisfied that . . . the defendant and the other person intended to promote or facilitate the committing of this crime. In other words, *they share the intention to bring about that crime* or make it easier to commit the crime.

Supp. App. 26 (emphasis added). It next defined the special rule of conspiratorial liability for first-degree murder:

> Now I want to talk to you about *a special rule that applies to conspiracy to commit murder in the first degree*. I have given you the general rules of how one person can be responsible for a crime that was physically committed by another; that is, by being a conspirator or an accomplice of the other person. Now I want to explain that for the crime of murder in the first degree there are special rules.

> When two or more persons are charged with committing the crime of first-degree murder and one or more of them did not actually commit the murder, the person who did not actually cause the death may be guilty of murder in the first degree or conspiracy to commit murder in the first degree only if either of these two conditions are met:

> The first condition is where defendant was the member of a conspiracy that had as its specific goal the condition of the first-degree murder at issue. *In other words, as applied in this case, you may find in this case Mr. Coleman guilty of murder in the first degree only if you find beyond a reasonable doubt first of all, a goal of the conspiracy was to commit first-degree murder*;

> And, secondly, that *he knowingly entered into such a conspiratorial agreement*. If the conspiracy did not have first-degree murder as its intended goal but a member of the conspiracy other than the defendant—in other words, *if you would find that Mr. Kennedy committed a murder in the first degree, then Mr. Coleman cannot be found guilty of first degree just because he was a member of a conspiracy to commit some other offense*.

6

A person can also be guilty of first-degree murder when he did not cause the death personally if Commonwealth proves beyond a reasonable doubt that he was an accomplice to the murder. *To be an accomplice in the murder, the defendant himself must have intended that a first-degree murder occur*, and the defendant then aids, agrees to aid, or attempts to aid the other person in planning or committing it.

*Id.* at 26–27 (emphases added). The Court then concluded:

To sum up: A defendant may not be found guilty of the crime of first-degree murder where the death is caused by another person *unless the defendant himself*, as a conspirator or as an accomplice, *had the specific intent* of bringing about a murder in the first degree.

*Id.* at 27 (emphases added). Unlike the instructions in our prior cases, the Court here clearly and repeatedly indicated that the jury could not convict on first-degree murder without finding specific intent.

Coleman nonetheless argues the jury instruction was unconstitutional based on *Francis v. Franklin*, 471 U.S. 307 (1985). There, the jury was instructed to apply a rebuttable presumption of specific intent if it found that the defendant caused the victim's death. *Id.* at 315. The Supreme Court held that, even if the next sentence in the instruction communicated the correct rule (as the State had argued), "[l]anguage that merely *contradicts* and does not *explain* a constitutionally infirm instruction will not suffice to absolve the infirmity." *Id.* at 322 (emphases added). The Court acknowledged that the second sentence *might* have satisfied the explanation requirement if it began with the words "this means that." *Id.* at 322–23.

Coleman's jury instruction is distinguishable from that in *Franklin*. When the Court finished defining first- and third-degree murder, it said, "Now, you've heard me referring to the defendant *or someone with whom he conspired*. I am now going to

7

*explain* how somebody can be liable for the conduct of somebody else." Supp. App. 25 (emphases added). Here, the Court was saying it would *explain* the meaning of precisely the language that was problematic. During this discussion, it explained that convicting a defendant of first-degree murder through vicarious liability requires finding he had specific intent. And the Court brought attention to this rule by calling it "special" on three occasions. Thus, while the Court's instruction was not always a model of clarity, it is reasonable to conclude it did not violate *Franklin*.

*     *     *     *     *

For the foregoing reasons, we affirm.