J-S65040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TYREEK BYRD | |
| Appellant | No. 638 EDA 2015 |

Appeal from the PCRA Order March 6, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011530-2009

BEFORE: BENDER, P.J.E., SHOGAN, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED NOVEMBER 10, 2015**

Tyreek Byrd appeals from an order dismissing his timely petition seeking relief under the Post Conviction Relief Act ("PCRA").[1] We affirm.

Byrd shot an unarmed man in the shoulder on a residential street. A jury convicted Byrd of aggravated assault[2] and related offenses. On March 25, 2011, the trial court sentenced Byrd to 7-20 years' imprisonment for aggravated assault and no further penalty for the remaining convictions. Byrd did not file a direct appeal, electing instead to file a timely PCRA petition on July 8, 2011.

_____

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 2702(a)(1).

New counsel was appointed and filed an amended petition challenging the effectiveness of trial counsel. On March 6, 2015, after a limited evidentiary hearing, the PCRA court dismissed defendant's petition. This timely appeal followed. Both Byrd and the PCRA court complied with Pa.R.A.P. 1925.

Byrd's sole issue in this appeal is: "Did the PCRA Court err in determining that Appellant was not prejudiced by trial counsel's failure to object when Appellant's assertion of his right to remain silent was elicited at trial?" Brief For Appellant, at 4. In other words, Byrd claims that defense counsel was ineffective for failing to object during trial to passing references by a Commonwealth witness to Byrd's post-arrest silence.

Our standard of review is well-settled. "In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa.2014) (internal quotation marks and citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa.2014) (citation omitted). "It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record." *Commonwealth v. Robinson*, 82 A.3d 998, 1013 (Pa.2013) (citation omitted). However, this Court reviews the PCRA

court's legal conclusions *de novo*. ***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa.Super.2014) (citation omitted).

Counsel is presumed to have rendered constitutionally effective representation. ***See Strickland v. Washington***, 466 U.S. 668, 689 (1984). "To plead and prove ineffective assistance of counsel a petitioner must establish: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act." ***Commonwealth v. Stewart***, 84 A.3d 701, 706 (Pa.Super.2013) (*en banc*). If the petitioner fails to meet any of these prongs, his claim fails. ***Id.*** Arguable merit exists when the factual statements are accurate and "could establish cause for relief." ***Id.*** at 707. Whether the "facts rise to the level of arguable merit is a legal determination." ***Id.*** In considering whether counsel acted reasonably, we look to "whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success." ***Id.*** "Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." ***Id.*** Lastly, prejudice occurs where "there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." ***Id.*** This probability is sufficient when it "undermines confidence in the outcome of the proceeding." ***Id.***

A brief review of the evidence will place Byrd's argument in proper context. On July 13, 2009, the victim, Derrick Churchwell, was walking with his friends, Sharika Gibson and Marissa Hamilton, on Rodman Street in Philadelphia. They were going to drop off Gibson's 5 year old daughter, Akira, at her grandmother's house. As they were walking, Akira "playfully" hit Churchwell by tapping his hands and legs and taunting him to hit her back. Churchwell told her to stop, but Akira ignored him and continued to hit him. Churchwell asked Gibson to intervene, but Gibson disregarded his request. After Akira's misbehavior continued for several minutes, Churchwell grabbed Akira's arm to stop her. Akira began to cry. N.T., 1/25/11, at 27-33, 178-182.

Gibson had been on the phone with Akira's father when Akira began to cry. Gibson saw Akira crying and told Akira's father what happened, but assured him that everything was "okay" because she knew that Churchwell would not intentionally hurt Akira. Gibson dropped off Akira at her grandmother's house and argued with Churchwell as they walked back to Gibson's home. N.T., 1/25/11, at 27-33, 178-182.

As they approached Gibson's home, Gibson's sister, Taja, stopped Churchwell and asked what was going on. Churchwell was talking with Taja near Gibson's house when a car pulled up. Byrd and an unidentified man got out of the car and struck up a conversation with Gibson. Byrd, also

known as "Tita," was Akira's uncle. Gibson pointed at Churchwell and said, "[T]here he is right there." N.T., 1/25/11, at 33-35, 181-183.

Byrd approached Churchwell, demanding to know if Churchwell "hit his niece" and whether Churchwell thought he was "tough." Before Churchwell had an opportunity to explain, Byrd lifted up his shirt and revealed a gun tucked in the waistband of his pants. Byrd's friend came up behind the victim and grabbed his arms, and Byrd pointed the gun at Churchwell's face and chest. Churchwell heard a gunshot and fell to the ground, feeling pain in his shoulder and hearing people scream. Only after he saw blood on his shirt did he realize that he had been shot. By that time, Byrd and his friend had fled. N.T., 1/25/11, at 35-43, 113-120, 151-153, 183-186.

Churchwell was rushed to the hospital with a gunshot wound to the shoulder. He told police in the emergency room that he had been shot by a man known to him as "Tita." The next day, he gave a formal statement to the police identifying Byrd as the shooter and picked out Byrd from a photo array. Police also interviewed Gibson, who likewise identified Byrd as the shooter. She picked out the photograph of Byrd that police used to compile the photo array. N.T., 1/25/11, at 47-51, 186-188, 206-213; N.T., 1/26/11, at 7-14, 18-21.

Byrd was arrested and charged with aggravated assault. At trial, the Commonwealth presented seven witnesses, including Churchwell's mother, Stephanie Coaxum, and her friend, Robert Jackson. Ms. Coaxum had been

- 5 -

standing in front of her house, only six doors away from Gibson's, when she saw two men approach her son. She heard a gunshot, ran over, and found her son bleeding on the ground. Jackson corroborated her account. N.T., 1/25/11, at 113-120, 151-153.

On cross-examination, defense counsel asked questions that seemed to challenge the thoroughness of the police investigation. Accordingly, the Commonwealth also called the assigned detective, Robert Kerwin, to testify about the investigation. N.T., 1/25/11, at 133-135, 216-223.

On direct examination, Detective Kerwin made two unprompted references to defendant's post-arrest silence. When the prosecutor asked Detective Kerwin if the "investigation [was] complete" when he arrested defendant, Detective Kerwin testified that he had "still [been] trying to identify" the second person who was present during the shooting. The prosecutor clarified his original question, asking if the investigation was complete "with regards to information just as to Mr. Byrd." Detective Kerwin responded: "Well, once he is brought back to my division I explain to him what he is being charged with, I give him a chance if he wants to give his side of the story or not. He chose not to. And at that point I just did the arrest paperwork and then he was processed through our system." Defense counsel did not raise an objection. N.T., 1/26/11, at 24-25.

Shortly thereafter, the following exchange took place:

COMMONWEALTH: . . .You said at one point you continued your investigation of the incident; is that correct?

- 6 -

DETECTIVE KERWIN: Yes.

COMMONWEALTH: But you were finished with investigating Mr. Byrd?

DETECTIVE KERWIN: Yes. Well, since it was a second person that was involved, not that that person actually shot Derrick Churchwell, but from the interview he held on to him and wouldn't let him run that led to his being shot. We were trying to identify him. And since Mr. Byrd wouldn't tell us anything, I couldn't get any information from him . . .

This time, defense counsel raised an objection. N.T., 1/26/11, at 28-29. The court did not instruct the jury at this time that it could not draw any adverse inference from Byrd's silence. The court did, however, instruct the jury in its opening remarks and closing instructions that Byrd had a right to remain silent, and that the jury could not draw any adverse inference if he did not take the witness stand during trial. N.T., 1/25/11, at 6; N.T., 1/26/11, at 104.[3]

Byrd argues that defense counsel was ineffective for "failing to object when the Commonwealth elicited testimony" regarding Byrd's post-arrest silence. Brief for Appellant, at 8. Initially, we note that defense counsel did object the second time that Detective Kerwin mentioned Byrd's post-arrest silence. Moreover, the Commonwealth did not "elicit" any testimony from Detective Kerwin regarding Byrd's post-arrest silence. Detective Kerwin offered the testimony, unprompted, in response to a question from the

_____

[3] Byrd did not present any evidence.

prosecutor about the completeness of the investigation. Specifically, the prosecutor asked the detective if his "investigation [was] complete" when he arrested defendant "with regards to information just as to Mr. Byrd." He could not reasonably have anticipated that Detective Kerwin would respond by indicating that defendant had opted not to "give his side of the story" to the police. N.T., 1/26/11, at 24-25. The prosecutor's question was not designed to bring forth any information regarding Byrd's exercise of his right to remain silent.

More importantly, for several reasons, Byrd suffered no prejudice from the detective's references to his post-arrest silence. The prosecutor did not exploit the detective's testimony in any way. He did not mention Byrd's failure to give a statement in his closing argument or otherwise suggest that it was a tacit admission of his guilt. In addition, the trial court twice instructed the jury not to use Byrd's silence against him. This instruction cured any possible prejudice from the detective's testimony. **See Commonwealth v. Williams**, 615 A.2d 716, 722 (Pa.1992) (rejecting ineffectiveness claim because "any conceivable prejudice arising [from comment on appellant's post-arrest silence] was cured by the 'no-adverse inference' instructions given the trial court"); **see also Commonwealth v. Speight**, 854 A.2d 450, 458 (Pa.2004) ("it is presumed the jury follows the court's instructions," so any prejudice created in the minds of certain jurors due to counsel's statement "was cured by the judge's instructions"). Finally,

the evidence against Byrd was overwhelming. Both Churchwell and Gibson identified Byrd as the shooter. Two other eyewitnesses corroborated Churchwell's account by testifying that they observed the shooting, ran over and found Churchwell bleeding on the ground. Byrd presented no evidence in his defense. Thus, there is no reasonable probability that the outcome of trial would have changed had Detective Kerwin refrained from mentioning Byrd's post-arrest silence. **See Commonwealth v. Bishop**, 936 A.2d 1136, 1141 (Pa.Super.2007) (trial counsel was not ineffective for eliciting detective's reference to defendant's silence; "there was no prejudice as the evidence of Appellant's guilt was overwhelming, and there is no reasonable probability that the outcome of the trial would have been different absent counsel's question to Detective Rush"); **see also Commonwealth v. Philistin**, 53 A.3d 1, 32 (Pa.2012) (defendant not entitled to new jury in penalty phase of capital case where police officers attended trial in uniform during guilt phase; officers' presence did not prejudice defendant because "the overwhelming evidence against him showed he shot two police officers in the head at close range with a handgun").

For these reasons, the PCRA court properly denied Bryd relief under the PCRA.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/10/2015</u>