J-S19006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK BROWN | : | |
| | : | |
| Appellant | : | No. 3234 EDA 2018 |

Appeal from the Judgment of Sentence Entered October 9, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009516-2008

BEFORE: BOWES, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.: **FILED AUGUST 07, 2020**

Frank Brown appeals from his aggregate judgment of sentence of twelve to thirty-five years of incarceration imposed after his original sentence was overturned by this Court. Concluding that the resentencing court abused its discretion, we are constrained to vacate Appellant's judgment of sentence and remand for resentencing consistent with this memorandum.

This Court offered the following summary of the underlying facts of this case on Appellant's direct appeal.

> On December 18, 2007, Kathleen Kirchner (victim) and Barbara Kirchner (victim, 91 years-old) were returning to Barbara's home around 10 p.m.; Kathleen double-parked to allow Barbara to easily enter her home. As Kathleen began to escort Barbara up the front steps, [Appellant] came up from behind and held a gun to Kathleen's neck and demanded cash. With the gun embedded in her neck, Kathleen managed to turn over her wallet filled with cash to [Appellant]. Kathleen also went into Barbara's purse and retrieved $500.00 in cash and handed it to [Appellant]. After taking the money, [Appellant] ordered both to lie down in

[the] street or they would be shot. When Kathleen refused, [Appellant] fled the scene and ran down the street.

At trial, [Appellant] testified on his own behalf and offered an alibi defense. He stated he was working in South Carolina at a satellite television company on the date the crimes took place in Philadelphia. Although [Appellant] established his employment through pay stubs and time sheets, the company indicated that [Appellant] was not working at the company from December 14, 2007 through December 22, 2007. [Appellant] also had two family members offer testimony that he was employed with the same company in South Carolina, but neither could rule out the possibility that [Appellant] was present in Philadelphia on the day in question.

*Commonwealth v. Brown* ("*Brown I*"), 118 A.3d 441 (Pa.Super. 2015)

(unpublished memorandum at 1-2) (cleaned up), *appeal denied*, 118 A.3d

1107 (Pa. 2015).

On February 1, 2010, the [Honorable Peter F. Rodgers] found [Appellant] guilty of two counts each of the following crimes: aggravated assault, robbery, firearms not to be carried without a license, unlawful restraint, theft by unlawful taking, receiving stolen property, terroristic threats, simple assault, recklessly endangering another person, and false imprisonment. He was also found guilty of one count each of carrying firearms on public streets or public property in Philadelphia and possession of an instrument of crime. On March 18, 2010, the trial court sentenced [Appellant] to an aggregate term of seven to 14 years' incarceration, followed by 15 years' reporting probation. The court imposed sentence on the charges of robbery and aggravated assault pursuant to the mandatory minimum sentence for possession or control of a firearm at the time of the offense.

*Commonwealth v. Brown* ("*Brown II*"), 193 A.3d 1054 (Pa.Super. 2018)

(unpublished memorandum at 2-3) (citations and footnotes omitted).

Appellant's direct appeal afforded him no relief. *See Brown I*, *supra*.

On August 18, 2015, Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"), in which he claimed that trial counsel had been ineffective in establishing his alibi defense. With no action having been taken on his petition in nearly a year, Appellant filed on July 13, 2016, an amended *pro se* petition averring, *inter alia*, an additional claim that his sentence, which included a mandatory minimum, was illegal pursuant to **Alleyne v. United States**, 570 U.S. 99 (2013). **See** Amended PCRA Petition, 7/13/16, at 19-21.

Since Judge Rodgers had retired, Appellant's case was reassigned to the Honorable Anne Marie B. Coyle in October 2016, and counsel was appointed. Counsel filed a motion to withdraw and no-merit letter pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*), which neither acknowledged the amended *pro se* PCRA petition nor addressed the issues raised therein. Nor did counsel independently note that Appellant's sentence was illegal. The PCRA court issued a form letter indicating its intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907, stating generically that Appellant's petition lacked merit on the basis of counsel's **Turner**/**Finley** no-merit letter. The PCRA court thereafter dismissed Appellant's petition and granted counsel's motion to withdraw without addressing Appellant's illegal sentencing claim or indicating that the court had independently reviewed the record.

In Appellant's *pro se* appeal, he maintained, *inter alia*, that his sentence was illegal under **Alleyne**. This Court noted the failure of PCRA counsel and the PCRA court to address the issue,[1] but, observing that a court has the power to correct an illegal sentence *sua sponte*, vacated the judgment of sentence and remanded for resentencing. **See Brown II**, **supra** (unpublished memorandum at 9). Upon remand, Judge Coyle appointed counsel, ordered a presentence investigation ("PSI") report and mental health evaluation, and scheduled a resentencing hearing.

Judge Coyle first resentenced Appellant on August 29, 2018. The hearing began with Appellant's counsel reciting that Appellant, who was eighteen years old when he was arrested, had a prior record score of zero, and the offense gravity scores were ten, such that the guidelines called for a sentence on each of the robbery and aggravated assault convictions of forty to fifty-four months, as was agreed at Appellant's prior sentencing. **See** N.T. Sentencing, 8/29/18, at 7-8, 15. Counsel also cited mitigating factors, such as the fact that Appellant had been adjudicated dependent as a minor, but nonetheless obtained a high school diploma, went to trade school, and had been gainfully employed. **Id**. at 8. Counsel noted that, although Appellant's

---

[1] This Court held that Appellant waived his claims of ineffective assistance of PCRA counsel by not responding to the court's Rule 907 notice. **See Commonwealth v. Brown** ("**Brown II**"), 193 A.3d 1054 (Pa.Super. 2018) (unpublished memorandum at 5-6).

family had not been supportive in his youth, his father, mother, grandmother, and siblings were present for him at the hearing. *Id*. at 12-14. Counsel offered testimony from Appellant's mother, who despite being instructed by counsel not to get into the merits of the underlying case, persisted in contending that Appellant was innocent. *Id*. at 9-10.

The Commonwealth provided some alternative guideline calculations, offering ranges of forty-eight to sixty months "if" the robbery conviction involved inflicting serious bodily injury, or sixty to seventy-eight months "if we did a deadly weapon enhancement" and used an offense gravity score of twelve. *Id*. at 17-18. However, the Commonwealth opined that the higher ranges, if calculated, "wouldn't necessarily even be relevant" because Appellant had already served well over seventy-eight months, and it was requesting a standard-range sentence "and also putting in place the proper things that when [Appellant] comes home, he is able to land on his feet and be productive in society and not relapse into the behavior that he was having before, which was very serious." *Id*. at 18.

The trial court indicated that it did not agree with Appellant's calculations of the guideline ranges. *See* N.T. Sentencing, 8/29/18, at 15-16 ("I don't dispute that that was what was agreed to back in the day. I do dispute as to whether or not that is correct. . . . I'll leave it alone in terms of your assessment, sir."). However, at no point did the trial court state on the record its finding as to what the proper guidelines calculations were.

Appellant was then offered the opportunity to exercise his right to allocution. The trial court's failure to accurately hear Appellant's initial remarks resulted in the following exchange:

[APPELLANT]: I want to first start off, even though I know you just kind of told my mom not to do it --

THE COURT: Throw your mom out the door? Hold up a minute.

[APPELLANT]: Throw my mom out the door? What?

[APPELLANT'S COUNSEL]: I think he's a little confused, Your Honor.

THE COURT: No. He's not confused. Counsel, have a seat.

[APPELLANT'S COUNSEL]: Yes, ma'am.

THE COURT: [Appellant], starting off with a comment like that is not a good idea because your mom was not thrown out the door. What you are I think referring to is it was asked not to debate the original case itself but to confine her responses to the sentencing. Now, correct that perception.

[APPELLANT]: Okay.

THE COURT: So I will hear you in its entirely [sic], but do not state on this record what is not true. Go.

*Id*. at 18-19.

Although it appears that it was Judge Coyle whose perception needed correcting, Appellant proceeded to allocute, and Judge Coyle interacted with him, as follows:

[APPELLANT]: Okay. I want to start off, I know this is not going to help me at all, which I had a lot of experience talking to lot of guys that went through the same thing I'm going through right now. I know this is not going to help me at all. I feel like I have to say it because it's the truth.

- 6 -

THE COURT: Say what you want to say.

[APPELLANT]: I know you're not going to like this. I'm going to say the truth.

THE COURT: Say what you want to say, sir.

[APPELLANT]: I've been sitting in jail for 11 years for something I had absolutely nothing to do with. I wasn't even in the city. I sent you guys work records that show I was in a whole other state at the time. Work records that was supposed to be subpoenaed during my trial. When the subpoena records came back, there was a whole week missing. The week now is there and now I got Dish Network ignoring me now because they know they messed up.

I can't get no type of rhythm. Like I said, I know this is going to completely inconvenience me because I'm not showing remorse for these people that got robbed and all of this other stuff that happened to them. That was crazy. It was two women. It was crazy to me that that even happened to those woman. But I can't show remorse, a personal sense of remorse, because I had nothing to do with it. I know it's not going to help me, I know it ain't. I only can ask God that somehow you don't -- I'm not showing remorse.

I'm completely ready to go back to society. . . .

. . . .

I'm ready, Your Honor. I'm ready, Your Honor. This jail stuff is not for me at all, at all.

THE COURT: Okay. All right. Well, [Appellant], as I said in the beginning, I examined in great detail every single bit of information that I could about you. I am aware of your arguments with respect to Dish Network. The documents to which you are referring, do not cover the time period of the robbery. They did not. They do not. And that's what we have. Okay.

In terms of you, sir, however, when you say the time in custody is not for you, I'm inclined to note that you've had extreme difficulties and have not been rehabilitated, despite the fact that you were given this sentence, which in my opinion was generous. While remaining in the Pennsylvania Department of Corrections, your behavior was remarkably poor, startlingly so. Thus far, you have incurred 22 guilty misconducts, 30 of which resulted in 450 days of disciplinary custody, 150 total days of cell restriction, 50 days of los[s] of privileges. These misconducts range from refusing to obey an order, threatening employees and their families and so on.

When I looked at the dates of those respective misconducts, going back to at least 2011 and incurring until, the last one was July of this year, April of this year, another one in April.

[APPELLANT]: Your Honor --

THE COURT: I'm talking now. You're going to listen.

THE COURT: In 2017, a couple there. In 2015, a whole slew of them in 2015. There's some in 2014, 2013, 2012, and 2011. There has not been a single year you haven't failed to obey simple orders while in custody. That tells me, sir, that you are still at the age of 29, in great need of rehabilitation and attention. I'm going to give it to you.

. . . .

[APPELLANT]: Those are infractions for sleeping through count. I was diagnosed with anxiety. I stay up late times at night. That's refusing to obey orders, as you see. I haven't had a major [write] up in about two or three years since 2015.

THE COURT: Well, maybe you don't think it's major but they differ because you had write-ups and misconducts and findings of guilt within the prison institution every single year including this one. In fact, last month, one month before you're coming before me.

- 8 -

If you wanted to prove that you're rehabilitated and that you've learned your lessons in life in which you needed to do, that's the last way that you can do that. That tells me that instead of being further along in your development sir, you're worse. I have to think about the community, sir. When I see conducts, threatening an employee and their family, possessing contraband, refusing to obey orders, using obscene and inappropriate language. I mean, even refusal to stand up when they tell you to.

[APPELLANT]: That's sleeping through count.

THE COURT: You need to understand, sir, you're not here by invitation. It is not your will upon those that are in charge of controlling the jail, sir.

[APPELLANT]: I'm not trying to give you an attitude, Judge.

THE COURT: The reasons for my sentence are going to reflect my concern for the safety of our community with you, in view of the guidelines, in view of the very serious nature of these charges, in view of your apparent refusal to be rehabilitated, despite efforts all the way going back to when you're a young lad.

You know, I read Judge Rogers comments to you. It was his hope when he sentenced you in the lenient fashion that he did, that with those conditions that he placed, that you would improve. Sad to say, I think the opposite has happened. I can't ignore that. So my reasons for the sentence include all those factors, positive and negative about you, sir, including your lack of remorse to this day. All right.

[APPELLANT]: God bless you, you hear me? God bless you, Judge.

THE COURT: Thank you.

[APPELLANT]: I hope he reveals to you because one day it's going to come.

THE COURT: What's that?

- 9 -

[APPELLANT]: I hope he reveals the truth to you because one day it's going to come out no matter what. The truth is going to come out. That's a fact. I've been sitting in jail for all this time. But you hear this so much, I can't even blame you for doing what you're doing. I know you hear this all the time. I know it. I can't even blame you.

*Id*. at 20-24, 27-30.

Thereupon, Judge Coyle sentenced Appellant. Appellant did not respond with an abundance of equanimity to an increase from the original term of seven to fourteen years, followed by fifteen years of probation, to a term of twelve to thirty-five years of imprisonment, followed by fifteen years of probation. Rather, the record reflects that the following took place upon the announcement of Appellant's increased sentence:

THE COURT: . . . Do you understand your sentence?

[APPELLANT]: What's my total sentence, if you don't mind me asking, complied?

THE COURT: 12 to 30, plus 10. Wait –

[COMMONWEALTH]: It's 12 to 35, plus 15 years of probation.

[APPELLANT'S COUNSEL]: You said 12 to 35, plus 15 years probation?

THE COURT: Plus 15, yeah.

[APPELLANT'S COUNSEL]: If the probations are consecutive to each other, which is what I think you said –

THE COURT: They're all consecutive, so it's 15, right?

[APPELLANT'S COUNSEL]: Yes.

THE COURT: So credit for time served while on this case. It's calculated by the prison authorities. I'm forgetting something.

[APPELLANT]: I'm not going to get out of here without a lawyer or private investigator.

THE SHERIFF: You're going to have to stop talking. I'm not going to tell you anymore.

[APPELLANT'S COUNSEL]: Sir, do you understand the sentence that the Honorable Anne Marie Coyle just handed down to you?

[APPELLANT]: I got more time than I already had, right?

[APPELLANT'S COUNSEL]: I want to advise you that you have certain post-sentence rights. Within 10 days of today's date, you can file a motion to reconsider sentence, which must be in writing. As your court appointed counsel, I will absolutely do that for you. Okay?

[APPELLANT]: Excuse me. Help me to understand one more thing. The way I was just sentenced was considered to be aggregate or mitigated, like conditions based on stuff other than the actual thing that I was sentenced illegally the first time? I don't know how I ended up with more time. It's just blowing my mind.

[APPELLANT'S COUNSEL]: I can explain that to you.

[APPELLANT]: You just asked me if I understand the sentence. I'm just asking you.

[APPELLANT'S COUNSEL]: You don't understand it? Okay.

THE COURT: Sir, this sentence is my reflection of what I think you need based upon all the information that I have gleaned about you.

[APPELLANT]: Okay.

THE COURT: Primary in my forethought, is that because you have not been rehabilitated in the fashion that you should have

and for the lack of remorse and for the seriousness of the cases at issue and the information gleaned from your background and the application of the guidelines at issue, this is what I believe is appropriate.

You have the ability, sir, to request reconsideration of this sentence, as counsel has just told you. And if you wish, you can file an appeal on the basis of whatever you desire in reference to this sentence. That is my sentence.

The conditions that I have placed upon you are a direct reflection of what I think you need to help you further along. Because I don't think you have moved any further along in your rehabilitation, in fact, I think you're worse.

You have 10 days within which to file a petition for reconsideration. You have 30 days within which to file an appeal. It must be in writing. If you wish for your counsel to do so, he will file that on your behalf and will remain as your counsel until and unless otherwise ordered.

[APPELLANT]: I do wish him to do so.

THE COURT: Understood.

[APPELLANT]: I just wanted that to be on the record.

[APPELLANT'S COUNSEL]: I will.

THE COURT: Understood. Thank you.

[APPELLANT]: May God bless you. It's going to come out. It's going to be the biggest news in Philadelphia history. You hear me? I love y'all.

THE COURT: All right.

THE CRIER: That conclude [sic] your list. May I adjourn court?

THE COURT: Yes.

UNSWORN PERSON: You're just as bad as he is.

THE COURT: Ma'am, this is the problem. Out.

UNSWORN PERSON: You're just as bad.

THE COURT: Out.

THE SHERIFF: I'm not going to be disrespected by your son or anybody. Just letting you know.

THE COURT: Sheriff, take a breathe [sic].

UNSWORN PERSON: Why are we still in here?

THE COURT: You can stay or go as you wish. I will not have misconduct in this room. That's why I sentenced him in the first place.

- - -

(Pause.)

- - -

THE COURT: I want him back out. I'm resentencing him.

[APPELLANT'S COUNSEL]: Your Honor, maybe I can –

THE COURT: Get additional sheriffs. Do you want him out? Yes or no? Is it easier for you if I don't?

THE SHERIFF: No, it's fine. We're going to take care of this. Just give me one second.

THE COURT: Take your time.

[APPELLANT'S COUNSEL]: Your Honor, maybe I should speak to him before he comes out.

THE COURT: No. I think you should have a seat. I'll put a seat between him and you.

[APPELLANT'S COUNSEL]: That's a good idea.

THE COURT: Sir, I'm going to need you to testify. Have the other sheriffs bring him out.

- 13 -

- - -

(Pause.)

- - -

THE COURT: All right. We are back on the record in reference to Commonwealth of Pennsylvania vs. Frank Brown, CP ending in 9516-2008. After I sentenced [Appellant] and he was given his post-verdict rights, [Appellant], I heard yelling from you language that I cannot repeat in good company and in the manner that you were addressing the sheriff as you exited the room. I am *sua sponte* reconsidering my sentence.

I'm going to ask the sheriff to whom [sic] you were addressing, sir, could you please step over and be sworn. While we're waiting for him to be sworn in, I would also note that the defendant's mother also had a disruption in my room and had to leave due to her bad behavior. His family was not much better.

. . . .

THE COURT: Sheriff, what did the defendant say to you on exit, please.

THE WITNESS: He was very upset from his sentencing. He stated he was going to physically hurt me, which I understand because he's upset, but still, his respectful level should be better.

THE COURT: Thank you, sir. Any questions by anybody?

[COMMONWEALTH]: I don't have any questions.

THE COURT: Do you have any questions?

[APPELLANT'S COUNSEL]: Just one. Good morning, sheriff.

THE WITNESS: Good morning.

[APPELLANT'S COUNSEL]: . . . Was my client agitated when he said that to you?

THE WITNESS: Yes, he was.

[APPELLANT'S COUNSEL]: Okay. He didn't say it in a calm demeanor, right?

THE WITNESS: No.

[APPELLANT'S COUNSEL]: And it was immediately after sentencing, right?

THE WITNESS: That's correct.

[APPELLANT'S COUNSEL]: Okay. Nothing further, Your Honor.

[APPELLANT]: I tried to apologize right afterwards. I knew it was crazy. He said he was doing stuff.

THE COURT: All right. Sir, you don't have to speak. It's up to you if you speak. Is there something you want to tell me?

[APPELLANT]: I didn't have no ill will for him. This is a crazy situation. I don't know what's going on. It's like, it throwing me for a loop. My response after my sentencing, in regards to me and the sheriff, it was just like, I don't know. It was just like --

THE COURT: Okay. But you know, here's the thing.

[APPELLANT]: Yes.

THE COURT: The reason I gave you that sentence, sir --

[APPELLANT]: Yes.

THE COURT: Was precisely because of the behavior that you just exhibited while you're in jail. I have not had many people with 22 misconducts, many of which for threatening people. Rules just do not apply to you. That's why I think you're violent and potentially a danger to this community. You do not control yourself. The level of voice that I heard coming out of your mouth was most disrespectful and violent and

- 15 -

that man there was simply escorting you from the courtroom and you took it out on him.

I'm reconsidering my sentencing, sir, because I don't think it's enough.

[APPELLANT]: Do what you want. I'm going to beat it anyway. Do what you want. I'm going to beat it.

THE COURT: Well, yeah? Good luck to you.

[APPELLANT]: You sentenced me when you wasn't suppose to.

THE COURT: You're going to beat it. All right.

[APPELLANT]: I'm going to beat it. That's my promise to you. And God bless all of y'all. You all heard?

THE COURT: Yeah. God bless you, too. God has nothing to do with this right now.

[Whereupon, amidst further back-and-forth with Appellant, the trial court changed two of Appellant's concurrent sentences to consecutive.]

. . . So your sentence is now 19 years of 59 years state time incarceration, followed by 15 years of reporting probation. . . .

. . . .

[APPELLANT]: You know, I was threatened first by your cop, right? That's why I told him he could come in there. Oh, I don't think we got that out the way. You didn't ask him if he said something to me. He did. I got a little loud. He was like, You want me to come in there? I said, Come in here and I'll twist you up. Yeah. That's what happened.

THE COURT: So you told a sheriff that you would twist him up?

[APPELLANT]: Yeah. I was threatened first.

THE SHERIFF: Sir, just --

- 16 -

[APPELLANT]: I hear what you're saying. I just wanted this to be on the record, that I was threatened first. Nah, I hear what you're saying. It can't get any worse.

THE COURT: Actually, it can. There are other counts here that I ran concurrent. So I would strongly advise that you listen to your counsel at this moment in time. He can give you your post-verdict rights and we will proceed accordingly.

*Id*. at 33-45.

On September 10, 2018, Judge Coyle again *sua sponte* resentenced Appellant, "to correct a minor discrepancy," this time resulting in an aggregate term of fourteen to forty years of incarceration, followed by fifteen years of probation. Trial Court Opinion, 6/24/19, at 4. Appellant filed a timely post-sentence motion in which he argued that the September 10, 2018 sentence was manifestly excessive in light of the original sentence and the mitigating evidence, and that it was the product of vindictiveness. *See* Post-Sentence Motion, 9/20/18, at ¶¶ 6-9.

At the hearing on Appellant's motion for reconsideration, after Appellant's counsel, the Commonwealth, and Appellant addressed the court, the trial court stated as follows:

Well, sir, I do have to state that your presentation before this court is quite different today than when you were before me on the state of the sentence when you appeared live. Sir, I entered into my sentence and will enter into my sentence and ruling today the following information:

Number one, all the information that was gleaned from the presentence investigative report[2] and mental health assessment that was conducted pursuant to order of this court.[3] I cannot ignore nor should I the facts gleaned from therein which includes among other things at least 22 misconducts while in custody. Indeed the reason that you have not been paroled even under the previous sentence imposed by the issuing prior court is directly related to your inability to comply with the treatment program while in confinement.

I note that many of your misconducts stem from your abusive language and inappropriate refusals to obey orders. Your threatening behavior to staff while in custody. Those bits of information while not conclusive certainly to any sentence, are legitimate factors to be reviewed by this court. Not the least of which the prior judge that sentenced you did not have as I do the amount of information about you that has been supplied upon which to rely.

I took special note as to the inherent violence that was committed by you during the underlying offenses. That there were not one but two victims in this matter. One of which was a senior person who was forced to lie down in the street as she was being robbed by you at point of firearm. I note the victim impact to both of those individuals.

I reviewed in addition to the nature of the current offenses, the prior efforts, although not computed in your record score pursuant to prior commitments that you had back in the day, attempts to rehabilitate you and several difficulties encountered during those attempts. I did take note, sir, of some of your

_____

[2] The presentence investigation ordered by Judge Coyle is not included in the certified record. We note that, at no point during any of Appellant's resentencing hearings did the trial court resolve the question noted at the original resentencing hearing concerning exactly what sentences were recommended by the guidelines based upon Appellant's prior record score of zero.

[3] As noted above, the mental health assessment was ordered, but was not conducted prior to the initial resentencing and was waived by Appellant. Nothing in the certified record before us indicates that the assessment was conducted prior to the additional resentencings.

successes which you correctly identified as the certification in carpentry and the like.

I note that you had a rough upbringing. In fact, your parents displayed their lack of respect for any court when they were in the court with you at the time of sentencing to the point that they almost had themselves arrested due to their bad behavior before this judge in a courtroom. So I took that into account that you certainly did not have correct direction in life. But there were many people within your life; your grandmom, most importantly, attempted to help you. She's the only one who exercised any sense before me in this courtroom.

I also take into account, sir, your behavior before me. Sir, when you were before me, you exhibited behavior that indicated quite clearly that you do pose a danger to the Commonwealth's safety. Your speeches before me included repeated blessings upon this court. Now, I come from folks that are quite adept at blessing people when they mean the exact opposite.

. . . .

And your repetition of words of blessing in a manner that suggested cursing and disrespect for this court were duly noted. It was also duly noted, sir, that you admitted on the record after your fray with the sheriff upon exiting the door of my courtroom, that you had threatened that sheriff. [4]

. . . .

Sir, I'm going to amend the order of sentence to make it a little bit more streamlined and consistent and understandable for everybody. But I took all the information into account. Most particularly, the person that I have before me as he presented himself to be. And as you presented yourself to be before this court, sir, I have major concerns.

_____

[4] Appellant indicated that he did not understand why the court never addressed his contention that the sheriff was the first to make a threat. *See* N.T. Sentencing, 10/9/18, at 12-13. However, a speaker identified on the record as "Prison Officer" indicated that another hearing was due to begin in five minutes, and Appellant's questions were not answered. *See id*. at 13.

N.T. Sentencing, 10/9/18, at 9-13.

Thereupon, Judge Coyle imposed a sentence of twelve to thirty-five years of incarceration with no probationary tail, but placed numerous conditions on Appellant's incarceration and parole, as well as on his now non-existent probation. *See id*. at 13-15 (providing, *inter alia*, that Appellant shall be subject to drug screening and that his "first positive test will result in a violation before the parole board while on probation").

Appellant filed a timely notice of appeal from the October 9, 2018 judgment of sentence. The trial court issued a deficient order pursuant to Pa.R.A.P. 1925[5] with which Appellant complied. Thereafter, the trial court authored a Rule 1925(a) opinion. Appellant presents the following question for this Court's determination: "Did the trial court err when it sentenced Appellant . . . to a term of incarcerat[i]on which was manifestly excessive, as well as vindictive?" Appellant's brief at 2 (unnecessary capitalization omitted).

We begin with a review of the applicable law.

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the

_____

[5] The trial court's order merely directed Appellant to "provide this [c]ourt" with his statement within twenty-one days. Order, 2/19/19. Contrary to the mandates of Pa.R.A.P. 1925(b)(3), the order did not advise Appellant that that the statement had to both be filed with the court and served on the judge, and that waiver would result from failure to comply. Hence, it is deficient and unenforceable. *See Commonwealth v. Bush*, 197 A.3d 285, 287 (Pa.Super. 2018).

appellant has invoked our jurisdiction by considering the following four factors:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Commonwealth v. Samuel**, 102 A.3d 1001, 1006-07 (Pa.Super. 2014) (citations omitted).

Appellant filed a timely notice of appeal and preserved the issue in a timely post-sentence motion seeking reconsideration of his sentence.[6] Appellant's brief contains a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). Thus, we consider whether Appellant has raised a substantial question.

---

[6] The Commonwealth argues that Appellant did not satisfy the post-sentence motion requirement because he did not file a new motion raising an excessiveness challenge to the sentence that resulted from the partial grant of his first motion. **See** Commonwealth's brief at 13. Appellant counters that a new motion was unnecessary pursuant to Pa.R.Crim.P. 720. **See** Appellant's brief at 14-15. We agree with Appellant. Appellant's position was clear from his first post-sentence motion, and the court's final sentence did not satisfy his complaints. As such, a second post-sentence motion was unnecessary. **See** Pa.R.Crim.P. 720, Comment ("Once a sentence has been modified or reimposed pursuant to a motion to modify sentence . . ., a party wishing to challenge the decision on the motion does not have to file an additional motion to modify sentence in order to preserve an issue for appeal, as long as the issue was properly preserved at the time sentence was modified or reimposed.").

Appellant avers that the aggregate sentence is manifestly excessive and vindictive, as it was in the aggravated range[7] despite the presentation of mitigating evidence, and it lacked an objective justification for the significant increase from his original sentence. **See** Appellant's brief at 12. We conclude that Appellant has raised substantial questions that the sentence is not appropriate under the sentencing code. **See**, **e.g.**, **Commonwealth v. Bullock**, 170 A.3d 1109, 1122 (Pa.Super. 2017) (holding claims that the sentence is manifestly excessive and the product of vindictiveness raise substantial questions. **See also Commonwealth v. Barnes**, 167 A.3d 110, 123 (Pa.Super. 2017) (*en banc*).[8] Therefore, we proceed to address the merits of Appellant's claim.

"When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." **Commonwealth v. Edwards**, 194 A.3d 625, 637 (Pa.Super. 2018) (cleaned up). "We cannot re-weigh the

_____

[7] It is not clear whether the trial court viewed the sentence as standard-range or aggravated-range because there was no finding as to the guideline ranges placed on the record. We discuss the import of this absence *infra*.

[8] Noting Appellant's reliance upon **Commonwealth v. Barnes**, 167 A.3d 110 (Pa.Super. 2017) (*en banc*), the trial court indicated that the decision was "apparently an unreported memorandum opinion and thus of no precedential value[.]" Trial Court Opinion, 6/24/19, at 17. While Appellant failed to provide the full citation for the case, the **Barnes** decision that Appellant cited and quoted is indeed a published *en banc* opinion, not an unpublished memorandum.

sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa.Super. 2009). Hence, we review the sentencing court's sentencing determination for an abuse of discretion.

> In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa.Super. 2014).

While its discretion is broad, "the trial court's discretion is not unfettered." *Commonwealth v. Coulverson*, 34 A.3d 135, 144 (Pa.Super. 2011). "When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." *Antidormi*, *supra* at 761 (citations and quotation marks omitted). "And, of course, the court must consider the sentencing guidelines." *Coulverson*, *supra* at 144 (cleaned up). The sentence "should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

Where, as here, "a sentence is vacated and the case remanded for resentencing, the sentencing judge should start afresh[.]" ***Barnes***, ***supra*** at 125 n.13.

> Due process of law requires that vindictiveness against a defendant for having successfully attacked his first conviction must **play no part** in the sentence he receives after a new trial. To assure **the absence of a vindictive motivation**, whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. This requirement has been read to create a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence.

***Commonwealth v. Speight***, 854 A.2d 450, 455 (Pa. 2004) (cleaned up). The same applies "when the original sentence is vacated and a second sentence is imposed without an additional trial." ***Barnes***, ***supra*** at 123.

Therefore, when a defendant is given a harsher sentence following an appeal, "the reasons for doing so must affirmatively appear." ***Commonwealth v. Greer***, 554 A.2d 980, 988 (Pa.Super. 1989) (internal quotation marks omitted). "Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. ***Id***. "Absent evidence that a sentencing increase is justified due to objective information concerning a defendant's case, the presumption of vindictiveness cannot be rebutted." ***Barnes***, ***supra*** at 124 (internal quotation marks omitted).

However, the presumption of vindictiveness does not apply each time a defendant receives a higher sentence upon resentencing. ***See Texas v.***

*McCullough*, 475 U.S. 134, 138 (1986). Rather, "in each case, we look to the need, under the circumstances, to guard against vindictiveness in the resentencing process." *Id*. (cleaned up). Specifically, when the resentencing is conducted by a different judge than the one who imposed the original sentence, the presumption of prejudice does not automatically attach. *Commonwealth v. Tapp*, 997 A.2d 1201, 1204 (Pa.Super. 2010). This is because "the sentencer imposing the second sentence has no personal stake in the prior conviction and no motivation to engage in self-vindication, rendering the threat of vindictiveness far more speculative than real." *Id*. (cleaned up). Therefore, to succeed on a vindictiveness claim when a different judge performs the resentencing, the defendant bears the burden of production and persuasion in establishing actual vindictiveness. *Id*. at 1205.

With these principles in mind, we turn to Appellant's arguments. As to both his vindictiveness and excessiveness contentions, Appellant's position is the same:

> the resentencing court's only reason for giving [Appellant] a considerably longer sentence was that he had numerous misconducts while serving his sentence at SCI-Forest. These misconducts, however, had nothing to do with the original incident in the instant matter and took place after [Appellant] was already sentenced and incarcerated in this matter. It is also notable, that [Appellant] had already received punishment for these misconducts from SCI-Forest, in the form of disciplinary custody, cell restriction and lost privileges. In sum, these misconducts had nothing to do with [Appellant]'s case and should not have been used as a justification for a longer sentence.

Appellant's brief at 22.

- 25 -

We first address Appellant's burden to establish vindictiveness. Judge Coyle was not the judge who imposed Appellant's initial sentence. However, Judge Coyle was the judge who failed to acknowledge or address Appellant's PCRA claim that that sentence was illegal, although her role in the face of PCRA counsel's request to withdraw was to ensure that counsel addressed all of the issues Appellant wished to raise and to independently review the record and agree with counsel that none had merit. *See*, *e.g.*, *Commonwealth v. Rykard*, 55 A.3d 1177, 1184 (Pa.Super. 2012). Hence, it was Judge Coyle whose PCRA order was reversed by this Court when we granted Appellant relief and remanded for sentencing. With this connection to the decision that was reversed upon Appellant's exercise of his appellate rights, Judge Coyle arguably had the type of personal stake in the prior sentence to warrant the attachment of the presumption of vindictiveness.

Nonetheless, even if Judge Coyle did not have a sufficient personal stake in the original sentence to trigger the presumption of vindictiveness by virtue of her prior ruling in the case, as detailed in our analysis *infra*, the record shows that Judge Coyle exhibited a personal interest in the resentencing sufficient to invalidate the proceedings based upon an impermissible appearance of partiality and ill will.

The trial court opinion indicates that any presumption of vindictiveness in this case was overcome by the objective information of Appellant's conduct between the original sentencing and the resentencing which warranted the

increased sentence: his prison misconducts and his comportment at the initial resentencing hearing. **See** Trial Court Opinion, 6/24/19, at 19-22. Regarding the latter, the trial court opinion refers repeatedly to disparaging remarks made by Appellant, which it deemed indicative of Appellant's need for lengthier confinement to protect the public and rehabilitate Appellant. **See** **id**. at 19 ("[Appellant]'s allocution consisted, at first, of an apparently disparaging remark about the court's directions to his mother . . . ."); **id**. at 21-22 (stating that Appellant "had no basis to complain that the court did not have adequate reasons" to increase his sentence after reiterating that Appellant's mother "made a disparaging remark to the judge" and Appellant was heard "loudly disparaging and threatening the sheriffs who were escorting him from the courtroom"). As for Appellant's extensive record of prison misconducts that did not result in any additional criminal charges, the trial court stated, without offering any legal authority in support, that "[p]rison misconducts are given the same weight in resentencing as would be given to the commission of subsequent crimes when considering a defendant's potential for rehabilitation." **Id**. at 22.

We discern several problems with the trial court's analysis. First, we have found no case law to support the statement that prison misconducts are equal to new crimes in resentencing a defendant. If an inmate's actions constitute a crime, new charges may be filed against him. Rather, prison misconducts arising from the failure to follow orders, are akin to technical

violations of probation. While the commission of a new crime is sufficient to revoke probation and sentence the defendant to total confinement, technical violations only merit revocation and confinement if they indicate that the defendant is likely to commit another crime unless he is confined, or confinement is necessary to vindicate the authority of the court. *See*, *e.g.*, *Commonwealth v. Cottle*, 426 A.2d 598, 601-02 (Pa. 1981). Nothing in the record before us suggests that Appellant's prison misconducts were of sufficient seriousness to rise to the level of a crime. Further, the trial court does not indicate why Appellant's prison misconducts suggest that a lengthier period of confinement is necessary to prevent Appellant from committing additional crimes.

Instead, the desire to vindicate the trial court's authority is suggested by its reliance upon Appellant's demeanor at the sentencing hearing to increase, then further increase, his sentence. As noted above, the transcript from the August 29, 2018 resentencing hearing does not support the trial court's indication that Appellant began his allocution by disparaging the court. Rather, the transcript clearly establishes that the trial court misheard Appellant, who merely sought to acknowledge his awareness that the trial court would not be receptive to his maintaining his innocence.[9] The trial

_____

[9] To reiterate , in pertinent part, the transcript reveals the following exchange:

court's persistence in reliance upon "disparagement," both real and imagined, further suggests that personal vindication of the court's authority in the face of insufficient respect from Appellant motivated the trial court's sentencing decisions as much as, if not more than, Appellant's failure to respect prison authorities.

Indeed, the trial court's comportment and impulsive alterations to Appellant's sentence based upon personal affront to what it perceived to be disparaging statements directed at it are similar to those at issue in *Commonwealth v. Lucky*, ___ A.3d ___, 2020 WL 727983 (Pa.Super. February 13, 2020). In that case, we held that the appellant was entitled to resentencing based upon the appearance of bias where Judge Coyle similarly suddenly increased the defendant's sentence without explanation after expressing frustration with the defendant and her belief that he had been disrespectful. *Id*. at *9 ("There is nothing in the record to indicate that the judge's reason for abruptly re-imposing the increased statutory maximum sentence was for any reason other than her frustration with [the a]ppellant or

_____

[APPELLANT]: I want to first start off, even though I know you just kind of told my mom not to do it --

THE COURT: Throw your mom out the door? Hold up a minute.

[APPELLANT]: Throw my mom out the door? What?

N.T. Sentencing, 8/29/18, at 18-19.

her belief that [he] was being disrespectful."). The **Lucky** Court also found it significant that rather than utilizing her Pa.R.A.P.1925(a) opinion to deny the appellant's claims of bias and ill will, Judge Coyle "quoted a portion of the notes of transcript from the . . . resentencing hearing where she rebuked [the a]ppellant as disrespectful when he sought clarification of his sentence." **Id**.

In the instant case, the trial court likewise imposed a sentence lengthier than Appellant's original sentence or that requested by the Commonwealth after interpreting Appellant's allocution as disparaging, then *sua sponte* increased the sentence further immediately after feeling disparaged by Appellant's reaction to the first sentence. While the trial court opted to retract one portion of the impulsively-increased sentence, part of it remains. **See** Trial Court Opinion, 6/24/19, at 21-22 (detailing how the court changed two sentences from concurrent to consecutive at the *sua sponte* August 29, 2018 sentencing hearing, but "did change one of those back to concurrent" at the hearing on Appellant's motion to reconsider the September 10, 2018 *sua sponte* resentencing). The trial court also utilized the Pa.R.A.P. 1925(a) opinion to reproduce from the transcript the disparaging comments and her rebuke of Appellant for making them, and not to disclaim ill will or vindictiveness.

Most concerningly, the trial court repeatedly expressed the belief that the appellate decisions concerning vindictiveness in resentencing proceedings stand for the proposition that, to be successful on his vindictiveness claim,

Appellant had to prove that the longer new sentence was **solely** motivated by vindictiveness. ***See*** Trial Court Opinion, 6/24/19, at 17 ("[T]he defendant is required to prove that the court exercised vindictiveness as the sole motive[.]"). ***See also id***. (indicating that a defendant's burden is to establish that "his sentence as being exclusively vindictive and not based upon any legitimate considerations"); ***id***. at 23 ("[Appellant] has pointed to no indication whatsoever, either on or off the record, that the resentence was excessive or based solely upon vindictiveness.").

That is not the law. As we indicated above, our Supreme Court has made it clear that, in the resentencing of a criminal defendant after he successfully exercised his rights, vindictiveness "must **play no part**" in the new sentence. ***Speight***, ***supra*** at 455 (emphasis added). Rather than ensuring that sentences are not merely based in part on judicial vindictiveness, due process requires "the absence of a vindictive motivation[.]" ***Id***. Notably, in opining about the appropriateness of the sentences, the trial court never disclaimed vindictiveness as one of the motivating factors. Rather than professing a lack of vindictive motive as a basis to deny Appellant relief, the trial court cited Appellant's failure to meet the burden of proving that it was the **sole** motivation for the new sentence. ***See*** Trial Court Opinion, 6/24/19, at 17. Hence, the trial court committed an error of law in resentencing Appellant four times over the course of three

hearings while operating under the impression that some amount of vindictiveness was permissible so long as there were also other motivations.

Although Appellant does not argue the following points in pursuing his claim that the trial court's sentence results from an abuse of discretion, we find our conclusion that his claims merit relief bolstered by additional errors. First, it is axiomatic that, "[w]hen imposing a sentence, the sentencing court **must** consider the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing[.]" *Bullock*, *supra* at 1126 (cleaned up, emphasis added). "A sentencing judge must demonstrate an awareness of the guideline sentencing ranges so that the appellate court can analyze whether the reasons for a departure from the guideline ranges are adequate." *Commonwealth v. Scassera*, 965 A.2d 247, 250 (Pa. Super. 2009). *Accord Commonwealth v. Dotzman*, 588 A.2d 1312, 1317 (Pa.Super. 1991) ("The court's discretion comes into play in imposing sentence, only after it has determined the proper sentencing guideline range.").

Here, Appellant presented his interpretation of the guideline ranges, the Commonwealth offered several others, and, while the trial court expressed its disagreement with Appellant's calculations, it never stated which ranges it deemed applicable. By the Commonwealth's calculations, Appellant's five-to-ten-year sentences appear to be within the standard range, at least for some counts. Under Appellant's calculations, the trial court's sentences are in the aggravated range. The trial court, having given no indication of its

understanding of the appropriate ranges, has failed to indicate any awareness of whether Appellant's sentences are within the guidelines, and, if not, explain the reasons for the deviations. If the trial court believed it was sentencing Appellant within the guidelines but actually applied them erroneously, we would be required to vacate the sentence for that reason alone. ***See*** 42 Pa.C.S. § 9781(c)(1).

The trial court further ventured outside of the scope of lawful sentencing procedures when, in the final resentencing proceeding, it imposed *ultra vires* conditions upon the terms of Appellant's state incarceration and parole.[10] It

_____

[10] Specifically, Judge Coyle imposed the following conditions "to all counts":

> You must maintain a misconduct-free period of confinement before being considered for parole.
>
> Upon eligibility for parole, sir, it shall initially be only to a halfway house that's approved by state supervision. You are to comply with any recommended dual diagnosis treatment following evaluation. You are to engage in anger management counseling because you need it. A minimum of 30 hours each year while under this court's supervision. You will submit to drug and alcohol screening. The first positive test will result in a violation before the parole board while on probation.
>
> . . . When you are released, sir, you will be submitted to random home and vehicle checks for drugs and/or weapons. You are prohibited from being in any vehicle with drugs and/or weapons. You are to do your leveled [*sic*] best to seek and maintain legitimate employment. You are to have no contact, whatsoever, in any way, shape or form with any of the victims or Commonwealth witnesses. You will submit to random drug screening as I indicated.

has long been the law of this Commonwealth that a trial judge lacks the authority to impose conditions of parole on a defendant serving a sentence of state incarceration. Rather, the judge may make only advisory recommendations. *See* 61 Pa.C.S. § 6134(b)(2). Thus, to the extent that the trial court purported to impose conditions of Appellant's parole, "those conditions and the order exceed the bounds of the court's authority and are subject to *vacatur*[.]" ***Coulverson***, ***supra*** at 142 (vacating no-contact condition of sentencing order). Hence, even were we not vacating the other portions of Appellant's sentence, we would be obligated to strike the trial court's conditions of parole. ***See***, ***e.g.***, ***Commonwealth v. Mears***, 972 A.2d 1210, 1212 (Pa.Super. 2009) (vacating portion of sentencing order providing for random searches of the defendant's residence upon parole).

To conclude, we stress that we do not act lightly in granting Appellant relief. To be sure, Appellant's prison record and comportment at sentencing are inexcusable. Moreover, it very well may be that vindictiveness in fact played a negligible role in determining Appellant's sentence. We fully appreciate that it is a rare case in which this Court finds an abuse of discretion warranting the disturbance of a trial court's sentence. However, this Court has observed that the breadth of a trial court's discretion in sentencing requires that the proceedings lack even the appearance of bias or ill will:

---

N.T. Sentencing, 10/9/18, at 14-15.

> The sentencing decision is of paramount importance in our criminal justice system, and must be adjudicated by a fair and unbiased judge. This means, a jurist who assess[es] the case in an impartial manner, free of personal bias or interest in the outcome. Because of the tremendous discretion a judge has when sentencing, a defendant is entitled to sentencing by a judge whose impartiality cannot reasonably be questioned. A tribunal is either fair or unfair. There is no need to find actual prejudice, but rather, the appearance of prejudice is sufficient to warrant the grant of new proceedings.

*Commonwealth v. Watson*, ___ A.3d ___, 2020 PA Super 28 (Pa.Super. Feb. 10, 2020).

The record of the multiple sentencing hearings in this case is extraordinary. In addition to the errors of law noted above, the record is rife with personal interactions, perceived slights, and *sua sponte* reconsiderations of sentence that, at the very least, create the appearance of personal bias. Accordingly, we are compelled to hold that Appellant's sentence is the product of an abuse of the trial court's considerable, but not unfettered, discretion. Consequently, we vacate Appellant's judgment of sentence in its entirety, and remand for resentencing not inconsistent with this memorandum.[11]

Judgment of sentence vacated. Case remanded for resentencing not inconsistent with this memorandum. Jurisdiction relinquished.

---

[11] This Court lacks the authority to order *sua sponte* that Appellant's resentencing be conducted by a different jurist. *See Commonwealth v. Lucky*, ___ A.3d ___, 2020 WL 727983 (Pa.Super. February 13, 2020) (citing *Commonwealth v. Whitmore*, 912 A.2d 827 (Pa. 2006) (providing that recusal must first be sought and ruled upon by the trial court)). However, Appellant may file a motion to recuse on remand.

Judge Musmanno joins the memorandum.

Judge McCaffery concurs in result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/20