J-S44019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WENDELL MILLER | : | |
| | : | |
| Appellant | : | No. 2798 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 4, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001379-2021

BEFORE: NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY MURRAY, J.: **FILED DECEMBER 30, 2024**

Wendell Miller (Appellant) appeals from the judgment of sentence imposed following his convictions by a jury of one count each of person not to possess firearms (firearms prohibited), firearms not to be carried without a license (unlicensed firearm possession), receiving stolen property (RSP), fleeing or attempting to elude police, and driving under the influence of controlled substances.[1] Appellant raises a sole challenge to the evidentiary sufficiency to sustain his convictions of RSP, firearms prohibited, and unlicensed firearm possession. We determine the evidence was sufficient to sustain Appellant's convictions, and, thus, affirm.

On November 3, 2020, Yeadon Borough Police Officer Elijah Brown (Officer Brown), while on routine traffic patrol and parked in his marked police

_____

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 3925(a); 75 Pa.C.S.A. §§ 3733(a), 3802(d)(1).

cruiser, observed a vehicle operated by Appellant[2] commit Motor Vehicle Code violations. *See* N.T. (jury trial), 7/19/23, at 7-9. The trial court detailed the relevant factual history:

> [The vehicle] was being operated with only one headlight[. Also, Appellant] disregarded a stop sign and then exchanged looks with … [Officer] Brown from only fifteen (15) feet away. N.T., 7/19/23, at 9. Resultantly, Officer Brown activated his emergency lights and siren [] to conduct a routine vehicle stop. *Id.* at 11. [Appellant] very oddly stopped his car in the middle of the street, turned his head, and used the rear-view mirrors to visually monitor the officer's activities[. Appellant] noticeably moved about inside the automobile. When [Officer Brown] opened his police car's door to disembark, [Appellant] immediately resumed driving, initially fleeing through a residential neighborhood and narrowly missing an arriving, unmarked police vehicle. *Id.* at 12-13. Officer Brown, keeping his eye on [Appellant's vehicle and] now with four (4) additional police cars chasing, watched as [Appellant] drove through the wooden barricades of a … manned road work zone at between sixty (60) to seventy (70) miles per hour. After a four (4) mile pursuit[,] and just as Officer Brown was discontinuing the chase for safety reasons, he … continued to observe [Appellant's] vehicle as it passed over … an inclined roadway and went airborne. [Appellant's] automobile landed in the opposing traffic lane of the street [and] then crashed into a light pole on the sidewalk…. *Id.* at 16-19, 209-14. [Appellant] and his passenger[, A.F. (the passenger),] immediately made their way out of the disabled car and ran in different directions. Officer Brown[,] in the course of literal seconds, apprehended the passenger, a seventeen (17) year-old female, and saw as he was returning on foot to the very nearby crash scene, [Appellant] "fighting multiple policemen." *Id.* at 23-26, 35-38. [Police subdued Appellant and placed him in custody.]
>
> Officer Mazen Malak [(Officer Malak)], … just after arriving on scene, approached [Appellant's] crashed [vehicle] and saw, plainly observable on the car's driver's seat, a nine (9) millimeter

---

[2] Appellant was not the vehicle's registered owner. N.T., 7/19/23, at 30.

handgun[,[3]] which [he] … secured. ***Id.*** at 28-29, 136-41, 144-46, 167.

Officer Malak … [drove] to Lankenau Medical Center [(the hospital)], … to which [Appellant] and [the passenger] had been custodially transported by emergency medical personnel. ***Id.*** at 148. Officer Malak remained in [Appellant's] immediate presence during his … [treatment] by medical staff. ***Id.*** at 149-50. … [W]hile at the [hospital, Officer Malak] verbally advised [Appellant] of his ***Miranda***[4] warnings, which [Appellant] waived, agreeing to speak with Officer Malak.[5] ***Id.*** at 164-65, 168. … [Appellant,] in conversation with Officer Malak [at the hospital,] as captured on [the officer's] body camera footage, referenced the seized firearm [] as being [black] in color…. ***Id.*** at 156, 160-61, 165-66, 168.[6]

_____

[3] The parties stipulated the firearm was stolen. ***See*** N.T., 7/19/23, at 39, 72.

[4] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[5] Officer Malak testified he also interviewed the passenger at the hospital. Officer Malak stated the passenger "was extremely calm and cooperative with me. [The passenger a]nswered all my questions, no belligerent behavior at all." N.T., 7/19/23, at 155. ***Cf. id.*** at 152, 155-56 (Officer Malak testifying Appellant behaved belligerently and uncooperatively at the hospital). The record does not indicate whether the passenger discussed the firearm during her police interview. The passenger did not testify at Appellant's trial.

[6] The following exchange occurred during the prosecutor's direct examination of Officer Malak, with respect to Appellant's interview at the hospital:

Q. [(Commonwealth):] Did [Appellant] speak about the firearm at all?

A. [(Officer Malak):] He did.

Q. What did he say?

A. … [T]here was a point in the conversation [that Appellant] mentioned that the gun was black.

Q. Did you tell [Appellant] the gun was black?

*(Footnote Continued Next Page)*

The [firearm] …, along with [] a known [saliva] sample obtained from [Appellant], was subsequently submitted for DNA comparative analysis to the Pennsylvania State Police's Bureau of Forensic Services. *See id.* at 196-97. *See also* Commonwealth Exhibits C-12 — Pennsylvania State Police Forensic Bureau DNA Report and C-13 — Pennsylvania State Police Forensic DNA Report. The result of this testing was as follows: "No interpretable results were obtained from the firearm … due to the complexity of the mixtures. Therefore, no comparison could be made to the DNA profile obtained from the known reference[d] sample from [Appellant]…." *Id.* at 198.

Trial Court Opinion, 1/18/24, at 13-15 (footnotes added; some citations omitted; citations and punctuation modified).

After Appellant's arrest, the Commonwealth charged him with the above-mentioned offenses, as well as aggravated assault.[7] The matter proceeded to a jury trial on July 19, 2023. The Commonwealth presented several witnesses, including Officers Brown and Malak. Appellant elected not to testify and presented no witnesses.

On July 20, 2023, the jury found Appellant guilty of the above-mentioned offenses, and not guilty of aggravated assault. The trial court

_____

A. No, I did not.

N.T., 7/19/23, at 156; *see also id.* at 165 (Officer Malak confirming Appellant "was asking [Officer Malak] questions … about the firearm that was recovered" at the hospital). It is undisputed the firearm police found on Appellant's driver's seat was black in color.

[7] 18 Pa.C.S.A. § 2702(a)(3).

deferred sentencing for the preparation of a presentence investigation report and a drug/alcohol evaluation.

On October 4, 2023, the trial court sentenced Appellant to an aggregate 7 to 15 years in prison. Appellant did not file post-sentence motions. Appellant timely filed a notice of appeal on October 27, 2023. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents a single issue for review:

Was the evidence sufficient to convict [Appellant] of possessory offenses, where the evidence did not prove beyond a reasonable doubt that he could immediately reduce the [firearm] to actual possession or otherwise govern its use or disposition as if in physical possession?

Appellant's Brief at 2-3.

A sufficiency claim "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Packer***, 168 A.3d 161, 166 (Pa. 2017). "Our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." ***Commonwealth v. Peters***, 320 A.3d 1231, 1236 (Pa. Super. 2024) (*en banc*) (citation and brackets omitted).

In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

- 5 -

*Id.* (citation omitted); *see also Commonwealth v. Risoldi*, 238 A.3d 434, 454 (Pa. Super. 2020) ("On appeal, this court evaluates the full record to determine whether sufficien[t] evidence was presented to support each element of the crime charged; however, we do not second-guess the jury's factual determinations.").

Here, Appellant contends the evidence is insufficient to sustain his convictions of firearms prohibited, unlicensed firearm possession, and RSP, because it failed to prove he actually or constructively possessed the firearm.[8] *See* Appellant's Brief at 11-21. Appellant claims "the evidence failed to demonstrate beyond a reasonable doubt that [he] knew of the presence of the gun, let alone had the power or intent to control it." *Id.* at 19-20. According to Appellant,

> [t]he circumstantial evidence did not prove beyond a reasonable doubt [that Appellant] knew there was a weapon in the car. There was no evidence that [Appellant] ever touched or reached for the gun. Police officers found the weapon in a vehicle that [Appellant] drove but did not belong to him.

*Id.* at 15.

Appellant contends the evidence establishes the passenger's constructive possession of the firearm:

> The passenger had the opportunity to put the weapon in the driver's seat when she got out and ran from the vehicle.

---

[8] Appellant challenges only the element of possession as to each offense. *See Commonwealth v. Parker*, 847 A.2d 745, 750-51 (Pa. Super. 2004) (detailing the required elements of RSP and unlicensed firearm possession).

Moreover, the passenger exposed her consciousness of guilt by fleeing from the vehicle … after the accident[,] and resisting Officer Brown when he tried to place her into custody.

*Id.* at 16; *see also id.* ("The prosecution did nothing to dispel the plausible and probable proposition that the passenger possessed the gun. The Commonwealth did not introduce any evidence about the passenger."); Appellant's Reply Brief at 1 ("[T]he Commonwealth's decision not to call the passenger as a witness was fatal to the attempt to prove [Appellant's] guilt beyond a reasonable doubt.").

The Commonwealth counters the circumstantial evidence, viewed in a light most favorable to it as verdict-winner, was sufficient to prove Appellant's constructive possession of the firearm beyond a reasonable doubt. *See* Commonwealth Brief at 6-14. The Commonwealth emphasizes "the evidence here showed that the gun would have been directly under [Appellant's] body (on the driver's seat) while he was driving and remained there when he fled from the car." *Id.* at 7. The Commonwealth further argues, "[Appellant's] conduct fully demonstrated his knowledge of and intent to exercise control of the gun." *Id.* at 8. The Commonwealth points out Appellant 1) "led police on a miles[-]long chase, which resulted in him crashing his car," *id.*; 2) fled on foot, further "evidencing [his] guilt," *id.*; and 3) "violently fought off police when they attempted to apprehend him." *Id.*; *see also id.* ("When asked about the gun at the hospital, [Appellant] did not exhibit any surprise and understood immediately what the police were referring to."). According to the

Commonwealth, "[t]his evidence readily allowed the jury to infer that [Appellant] constructively possessed the gun." ***Id.***

"Possession can be found by proving actual possession, constructive possession, or joint constructive possession." ***Commonwealth v. Rojas-Rolon***, 256 A.3d 432, 437 (Pa. Super. 2021) (citation and brackets omitted). Here, it is undisputed Appellant did not have actual possession of the stolen firearm; thus, the Commonwealth had the burden of proving Appellant's constructive possession or joint constructive possession. ***Id.***; ***Commonwealth v. McClellan***, 178 A.3d 874, 878 (Pa. Super. 2018) ("Illegal possession of a firearm may be established by constructive possession.").

This Court has explained,

[c]onstructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. … We [have] defined conscious dominion as the power to control the contraband and the intent to exercise that control. … To aid application, we have held that **constructive possession may be established by the totality of the circumstances.**

***Commonwealth v. Cruz***, 21 A.3d 1247, 1253 (Pa. Super. 2011) (emphasis added; citation and quotation marks omitted); ***see also Commonwealth v. Wright***, 255 A.3d 542, 553 (Pa. Super. 2021) ("[K]nowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession." (citations omitted)).

Significantly, the Commonwealth can sustain its burden of proving constructive possession "by means of wholly circumstantial evidence[.]" **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013); **Rojas-Rolon**, 256 A.3d at 437-38 ("In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue." (citation omitted)); **see also Commonwealth v. Arrington**, 86 A.3d 831, 840 (Pa. 2014) ("The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, and the [fact-finder], in passing upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence."). A defendant's mere presence at the scene, however, does not establish constructive possession. **Commonwealth v. Vargas**, 108 A.3d 858, 869 (Pa. Super. 2014) (*en banc*); **see also Commonwealth v. Parrish**, 191 A.3d 31, 37 (Pa. Super. 2018) (stating that the location and proximity of an actor to the contraband alone is not conclusive of guilt).

It is possible for two people to have joint constructive possession of contraband. **Commonwealth v. Sanes**, 955 A.2d 369, 373 (Pa. Super. 2008).

> To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the appellant. Our Supreme Court has recognized that "constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." [**Commonwealth v.**

*Johnson*, 26 A.3d [1078,] 1094 [(Pa. 2011)] (internal citation omitted).

*Rojas-Rolon*, 256 A.3d at 438 (citation modified).

Here, the evidence, properly viewed in the light most favorable to the Commonwealth as verdict winner, *see Peters*, 320 A.3d at 1236, sufficiently establishes Appellant's constructive possession of the firearm. As the trial court stated in its Pa.R.A.P. 1925(a) opinion:

> [A] review of the trial record [established that] … at all material times, [Appellant was] the operator of the … [vehicle]. … After [Officer Brown stopped the vehicle, Appellant] lur[ed] the officer out of his police vehicle[; Appellant then] sped away from … Officer Brown. N.T., 7/19/23, at 11-13. Despite the best efforts of Officer Brown and at least three (3) other pursuing police vehicles, [Appellant] fled from law enforcement at the rate of sixty (60) to seventy (70) miles per hour. … [T]he high[-]speed pursuit ended …. after a four (4) mile chase to elude police[, when Appellant] lost control of the [vehicle] and crashed…. *Id.* at 16-19, 210-11. [Appellant] … fle[d] on foot to evade law enforcement. *Id.* at 23-26, 35-38, 211. [Appellant] … still continued in his efforts to avoid apprehension by hiding in shrubbery, ignoring the verbal commands of participating police, and requiring involved law enforcement to physically intervene…. *Id.* at 211, 216-19.
>
> The stolen [firearm] was recovered by [] police officials **from atop the** [**vehicle's**] *driver's seat*, **from which** [**Appellant**] **had just seconds earlier … fled**. *Id.* at 28-29, 136-41, 144-46, 167.

Trial Court Opinion, 1/18/24, at 16-17 (emphasis added; some citations and punctuation modified).

The trial court additionally emphasized that while Appellant was at the hospital, he "volunteered to Officer Malak that the recovered firearm was … black [in color], although the officer had not" made that information known to

Appellant. *Id.* at 17; *id.* at 20 (pointing out that Appellant's "admission as to the … [firearm] being black in color [was] captured on [Officer Brown's] body camera"); *see also* N.T., 7/19/23, at 156, 165. The trial court further rejected Appellant's claim that "the mere presence in the front passenger seat of the teenage female [passenger] renders as a matter of law [Appellant's] challenged convictions legally infirm…." Trial Court Opinion, 1/18/24, at 20-21 (citing *Sanes*, 955 A.2d at 373 (stating it is possible for two people to have joint constructive possession of contraband)). Finally, the trial court emphasized that "the trial record … is simply replete with consciousness of guilt evidence." *Id.* at 18; *see also id.* (pointing out Appellant's "chaotic high[-]speed flight" from Officer Brown in Appellant's vehicle, crashing the vehicle, and his flight on foot).

Our review confirms that the trial court's foregoing reasoning is supported by the record and free of legal error. *See id.* at 16-18. Appellant's flight from police, both during the high-speed chase and after he crashed his vehicle, supported an inference of his consciousness of guilt.[9] *See Commonwealth v. Laird*, 988 A.2d 618, 627 (Pa. 2010) (recognizing that

---

[9] In the trial court's final charge, it instructed the jury concerning consciousness of guilt/flight and constructive possession. *See* N.T., 7/20/23, at 66-67, 69-70. The trial court's instructions are consistent with the Pennsylvania Standard Criminal Jury Instructions. *See* SSJI (Crim) 3.14 and 16.02(b). The law presumes that the jury followed the trial court's instructions. *See Commonwealth v. Speight*, 854 A.2d 450, 458 (Pa. 2004) ("It is presumed the jury follows [a trial] court's instructions.").

flight from the scene of a crime, and concealment, can constitute circumstantial proof of consciousness of guilt). Indeed, Appellant acknowledges this principle. ***See*** Appellant's Brief at 16.

Appellant's contention that the Commonwealth cannot establish his constructive possession of the firearm, because the vehicle had a passenger, disregards the fact that Appellant had equal access to the firearm, which police found on Appellant's seat.[10] ***See Hopkins***, 67 A.3d at 820-21 (holding evidence was sufficient to prove defendant's constructive possession of a firearm found in a vehicle he was driving, where the firearm was within arm's-reach of both where defendant was seated and his front-seat passenger, a juvenile).[11]

Additionally, the fact that someone else owned the vehicle did not preclude a finding that Appellant constructively possessed the firearm. ***See Wright***, 255 A.3d at 554 ("The fact that [a]ppellant was not the owner of the vehicle, or the possibility that the firearm and narcotics may have been primarily possessed by someone else, did not render the evidence insufficient to prove [a]ppellant's constructive possession, because more than one person

_____

[10] We reiterate the evidence establishes that the passenger, unlike Appellant, was cooperative during her police interview at the hospital, and never physically resisted police. ***See*** N.T., 7/19/23, at 155-56.

[11] The evidence of Appellant's constructive possession of the firearm is even stronger than that presented in ***Hopkins***. In ***Hopkins***, the defendant did not flee police, and the juvenile passenger admitted to possessing the firearm. ***See Hopkins***, 67 A.3d at 821.

may have constructive possession of an item at the same time." (citations omitted)).

Moreover, we are unpersuaded by Appellant's claim that "[t]his case is analogous to *Commonwealth v. Armstead*, 305 A.2d 1, 2 (Pa. 1973)." Appellant's Brief at 17. In *Armstead*, police conducted a traffic stop of a vehicle in which defendant was a passenger, and ordered defendant and the driver out of the vehicle. *Armstead*, 305 A.2d at 2. "The original arresting officers did not observe any weapon" when removing defendant and the driver from the vehicle. *Id.* However, when backup officers arrived, they observed a handgun "lying in the middle of the front seat." *Id.* At trial, the parties entered into a stipulation that a witness "would have testified that it was she who had originally notified the police on the day of the incident that her husband … had a gun on his person and was driving a car with the license number of the car in which [defendant] was a passenger." *Id.*

The Supreme Court in *Armstead* held the evidence was insufficient to establish defendant had constructive possession, or joint constructive possession, of the gun. *Id.* The Court concluded:

> The fact of the presence of the gun on the front seat during the time when [defendant] was a passenger is not more likely to flow from the fact that the gun was on the front seat when [defendant and the driver] alighted from the car, than is the fact of its absence. The Commonwealth has not proved that [defendant] knew of the presence of the gun.

*Id.* (citations omitted).

- 13 -

Here, unlike in **Armstead**, 1) there was no stipulation that the firearm in Appellant's vehicle belonged to another person; and 2) police found the firearm on top of the driver's seat, where Appellant was seated when he crashed the vehicle and continued his flight from police. Thus, **Armstead** is distinguishable and unavailing to Appellant.

Based on the foregoing, we conclude the Commonwealth presented sufficient evidence for the jury to find, under the totality of the circumstances, that Appellant constructively possessed the firearm. Accordingly, there is no merit to Appellant's sufficiency challenge to his convictions of RSP, firearms prohibited, and unlicensed firearm possession.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/30/2024